Vol. 101]          APRIL TERM, 1897.          **223**

Norton & Son's Assignee v. Hope Milling, Mining & Lumber Company.

CASE 38—PETITION EQUITY— MAY 1.

# Norton & Son's Assignee v. Hope Milling, Mining & Lumber Company.

### APPEAL FROM LEE CIRCUIT COURT.

1. MECHANIC'S LIEN—PRIORITY—WAIVER OF STATUTORY LIEN.—
Where one accepts as security for the purchase price of
machinery furnished, a mortgage on real estate, but subse-
quently discovers that the mortgage was fraudulent and that
the mortgagors have no title to the mortgaged property, he
has a right to ignore the mortgage and take such steps,
within the time prescribed by the statute, as are necessary to
restore him to his original position respecting the property
sold. And having perfected his mechanic's lien in the manner
prescribed by law, any lien acquired by attaching creditors
is subject to his, the attaching creditors only being entitled
under their attachments to such rights in the property as were
held by the debtor.

G. W. GOURLEY FOR APPELLANT.

1. While under the Kentucky Statutes if a mechanic or mate-
rial man accepts security for work done or materials furnished,
it is a waiver of his statutory lien, the security contemplat-
ed by the statute must be a *bona fide* security, and not a
sham one which is fraudulently palmed off on the mechanic;
otherwise all a designing individual would have to do would
be to make false representations as to the value and title of
property, and induce an innocent mechanic to accept it as
security for materials furnished, etc., and thereby deprive him
of his statutory rights. Chitty on Contracts, p. 748; Amer. &
Eng. Enc. of Law, vol. 8, p. 653, and vol. 15, p. 39; Caldwell
v. Young, 2 Duvall, 586.
2. The attaching creditors acquired a lien only upon such interest as
the debtor had. Drake on Attachments, sec. 220; Phillips on
Mechanic's Liens, sec. 225; Bispham's Principles of Equity,
sec. 45; Carstairs, &c. v. Kelly, 17 Ky. Law Rept., 309.

J. M. BENTON AND EDWARD W. HINES FOR WINCHESTER BANK.

1. Appellant's assignors waived their statutory lien by accepting

224          KENTUCKY REPORTS.          [Vol. 101

Norton & Son's Assignee v. Hope Milling, Mining & Lumber Company.

a mortgage on real estate from the debtor, (Ky. Stat., sec. 2467); and there is no proof in support of the claim that the debtor had no title to the mortgaged property, except the statement in the deposition of one of the Nortons; and his statement is purely a conclusion of law; and it was incumbent upon appellants to show want of title in the debtor in order to invalidate the security.

2. The allegation in the rejoinder that "said Hope Milling, Mining & Lumber Co., did not have any title to said land or any right thereto, or interest therein, whatever. Said defendant Hope Milling, Mining & Lumber Co. had mortgaged said land to one Thistlewait prior to the mortgage to Norton & Son," when strictly construed does not charge a want of title in the debtor.

3. Appellant has no right to reassert his statutory lien to the prejudice of creditors who have since his acceptance of the mortgage, acquired attachment liens. The attaching creditors may have foregone other remedies by reason of their reliance upon the fact that appellant had waived his statutory lien. Gorman v. Sagner, 22 Missouri, 137.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

On the 6th day of July, 1893, Henry Grinninger and others instituted their suit in equity in the Lee Circuit Court against the Hope Milling, Mining and Lumber Co., a corporation created under the laws of Kentucky, alleging that the defendant company was indebted to them for work and labor performed, under contract, in the erection and construction of a saw mill and building in Lee county, and charging that this work was performed within twelve months before the filing of the petition, and that within sixty days after they ceased such labor they filed in the office of the Lee County Court a statement of the amount due them, with a description of the property upon which the labor had been performed, and the name of the owner, and claiming a lien upon the building and all the machinery which went to make up

the saw mill and asking for an enforcement of their lien by a sale of the property.

Upon the filing of this petition the clerk of the Lee Circuit Court referred the case to the master commissioner of the court, with directions to ascertain the names of all persons who had liens against the property, the character of such liens, the amount of the debts and the order of their priority; and under that order the commissioner, in January, 1894, filed his report to the effect that there were prior liens on the property in favor of laborers for $266.39; that David Davis, as assignee of D. K. Norton & Son, held a lien of equal dignity, and priority with those of the laborers, Grinninger, etc., for $719.29; that the Winchester Bank held an attachment lien on the property for $540.12, with interest and costs; that D. L. Cook, for the Clark County National Bank, held an attachment lien for $529.45, with interest and costs, and the Market National Bank an attachment lien for $321, with interest and cost, etc.

To this report the attaching creditors excepted, because it allowed the assignee of Norton & Son a priority on their debt of $719.29, and the assignee of Norton & Son excepted to the report because it failed to allow the whole of their debt as a preferred lien.

The chancellor sustained the exception of the attaching creditors and held their liens to be prior and superior to the claim of Norton & Son's assignee, and, the property having sold for only $1,425, a sum not sufficient to discharge all the lien claims, Norton & Son's assignee brought his appeal to this court, asking a reversal. The record discloses these facts in connection with the claims of the parties to this

appeal: D. K. Norton & Son, a firm dealing in mill machinery, between the 20th day of June and the 23d of September, 1892, sold and delivered to the Hope Milling, Mining and Lumber Co., a corporation created under the laws of Kentucky, but at that time doing business at Iron City, Tenn., a mill and machinery of the value of $2,119.17, on which they had been paid the sum of $———. In the spring of 1893 this company changed its place of business to Three Forks City, in Lee county, Ky., and transported the mills and machinery which had been sold to them by Norton & Son to this point. After this removal, viz., between the 9th day of May and the 6th day of June, 1893, Norton & Son sold to the milling company $719.29 worth of additional machinery, consisting of an engine, boiler, bull wheel,·etc.

On the 23d day of June, 1893, the milling company, through its president, W. S. Holden, executed to Norton & Son a mortgage upon a tract of land described as situated in Lee county, Ky., and containing 1,500 acres, being the property conveyed to the mortgagors by Mrs. Reed, the mortgagors covenanting with the mortgagees that the title to the prop-· erty so conveyed was clear, free and unencumbered, to secure the payment of $1,700 of the indebtedness due by the milling company to Norton & Son. The evidence shows that this mortgage was executed in Covington, Ky., and was lodged for record in the office of the clerk of the Lee County Court on the 6th day of July, 1893. On the 7th day of July, 1893, Norton & Son filed in the office of the clerk of the Lee County Court a statement of the amount due them by the milling company, with the credits thereon and a description of the property sold by them to the milling com-

pany, signed and sworn to, and asserted their statutory lien on the machinery to pay the balance due that firm for machinery furnished to the milling company before its removal from Iron City, Tenn., and also for that furnished after its location at Three Forks City, Ky., and they filed their answer and cross petition in this action setting out the above facts, alleging that upon investigation they had discovered that the defendant company had no title to the land, that it was in litigation; that there was a prior mortgage on it for $1,700, and that upon the discovery that they had been defrauded by the misrepresentations of the officers of the milling company they had filed their lien under the statute against the machinery sold, which was at that time in the mill building of the milling company, and that they had abandoned any claim under the mortgage, so far as looking to it as surety for the payment of their debt, and asserting their right to a prior lien as vendors.

On the 29th day of June, 1893, the Winchester Bank and D. L. Cook, for the Clark County National Bank, instituted their suit in the Clark Circuit Court against the Hope Milling, Mining and Lumber Co., had attachments sued out and levied by the sheriff of Lee county upon the same property upon which the lien of Norton & Son had been asserted, and on the 5th day of July, 1893, the Market National Bank instituted its suit in the Clark Circuit Court, sued out an attachment and had it levied upon the same property.

At the September term of the Clark Circuit Court these attaching creditors recovered judgments for the amount of their respective claims, the chancellor sustaining their attachments and adjudging them liens on the same saw mill

and its attachments, and they set up these judgments as the basis of their claims in this action.

The question presented by this appeal is whether the appellant, the assignee of D. K. Norton & Son, or the attaching creditors have the prior lien upon the mill machinery and mill fixtures of the Hope Milling, Mining and Lumber Co. It is contended by the appellees that appellant's waived their statutory lien by accepting the mortgage upon the real estate from the debtor. This is denied by appellant because the grantor had no title to the mortgaged property, and that they were induced to accept same by fraudulent representations; that it furnished no security for their debt; that the acceptance did not operate as a waiver, and that they had the right to abandon it and assert their statutory lien within the prescribed time.

To sustain their contention appellees rely on the concluding paragraph of section 2467, of the Kentucky Statutes, which reads as follows: "Nor shall the liens authorized by this chapter have effect if security shall have been taken for labor performed or materials furnished."

The first question is, were Norton & Son estopped by the acceptance of this mortgage from asserting their statutory lien, or had they the right, upon the discovery of the fraud which had been practised upon them, to assert their lien with the same effect as if such security had not been taken? Upon this question Chitty on Contracts, page 748, says: "Fraud avoids any contract into which it enters *ab initio* in favor of the party injured by it, both in law and equity." Pomeroy, in his work on Equity Jurisprudence, page 872, says: "The defrauded party is permitted to rescind a con-

tract or other transaction, or, more accurately, to treat it as rescinded, and to restore himself thereby to his original position of right, and by means of appropriate action to recover back the property of which he has been defrauded or with which he has parted."

We think there can be no doubt that fraud so permeated the transaction by which Norton & Son were induced to accept the mortgage that they had the right to ignore it and to take such steps as were necessary to restore them to their original position respecting the property sold by them to the milling company, and, as the statutory period for filing their lien had not expired at the time they discovered this fraud, they had the right to file and assert their lien as if the mortgage had not been taken by them.

Who then has priority, Norton & Son under their statutory lien, or the attaching creditors under their judgments? In the case of the Caldwell Institute v. Young, 2 Duvall, 586, this court said: "We may add on this subject of liens of merchanics that they commenced with the commencement of their work, continued to enlarge, *pari passu* with its progress, and were made fully effectual from their inception to their consummation, by registration within six months, and no intervening encumbrances could break their continuity or curtail their extent. Any other construction of the beneficent statute enacted for the encouragement and security of building mechanics, might frustrate its object and make it a mockery. And we are of the opinion that properly registered liens of mechanics and material men are prior and superior to all other encumbrances." Drake on Attachments, section 220, says: "It is a well settled principle

that an attaching creditor can acquire through his attachment no higher nor better rights to the property attached than the defendants had when the attachment took place, unless he can show some fraud or collusion by which his rights are impaired. No interest subsequently acquired by defendants in the attached property will be affected by the attachment. If the attached property when attached is subject to a lien, *bona fide*, placed upon it by the defendants, the lien must be respected and the attachment postponed to it." Phillips on Mechanics' Liens, section 225, says: "A lien when once fixed can not be disturbed by any act of the debtor or his creditors." In the case of Carstairs, McCall &c. v. Kelly, 17 Ky. Law Rep., 309, this court says: "The attachment gave to the creditor no greater right than the debtor had, and the attaching creditor in a case like this is not to be regarded as an innocent purchaser, and his lien is subject to that of the vendor." In the case of Lane v. Robinson, 18 B. M., 631, the court says: "The lien created by their attachment was a mere equity and subject, necessarily, to other prior and subsisting equities; and no reason exists why as between attaching creditors and vendors asserting an enforcible equity, growing out of a contract of sale, the latter should not be preferred."

It is clear from these adjudications that the attaching creditors could have acquired only such rights in the property attached as were held by the Hope Milling, Mining and Lumber Co., and their attachment liens should have been held subordinate to the vendor's lien of Norton & Son for the machinery which was sold and delivered to the milling

company after their removal from Iron City, Tenn., to Lee
county, Ky., amounting to $719.29.

We do not think that Norton & Son are entitled to any
lien for the balance due upon their account of $1,096.08, for
the machinery sold by them to the defendant company at
the time that company was located at Iron City, Tenn., as
this was a distinct and independent transaction from the
sale of the machinery to the same company subsequently
to its removal to Kentucky, and the time had passed in
which they could have asserted a lien under the statute for
this machinery.  In short, we think the report of the master
commissioner  as to these liens should have been confirmed.

For the reasons indicated this cause is reversed and
remanded for proceedings consistent with this opinion.