### Continental Supply Company, et al. v. Sandy River Oil Company's Receiver, et al.

(Decided February 11, 1927.)

## Appeal from Elliott Circuit Court.

1. Mines and Minerals—Intervening Petition, in Receivership Proceedings, Pleading Lien for Supplies Furnished Oil Company, Held to State Cause of Action (Kentucky Statutes Supplement 1924, Section 2479a-3).—In proceedings for receiver of oil company and for sale of lease to satisfy creditors, in which all creditors were required to present claims, intervening petition alleging that petitioner had furnished supplies to oil company under contract with the company, and within six months thereafter had filed statement claiming lien with county clerk as required by Kentucky

Statutes Supplement 1924, section 2479a-3, held to state cause of action; the petitioner in such case being a lien creditor entitled to intervene in such proceeding.

2. Appeal and Error—Intervener Treated as Party in Lower Court Will be so Considered on Appeal, Notwithstanding Order Setting Aside Filing of Petition.—Where intervener, in receivership proceedings, made motions, filed exceptions to reports, and conducted itself and was treated by the other parties to the proceeding as if a party thereto, notwithstanding order setting aside filing of its petition, the court on appeal will treat intervener as a party and the petition as filed.

3. Mines and Minerals—Failure to Afford Lien Claimants Opportunity to Prove Claims in Receivership Proceedings Held Error (Kentucky Statutes, Section 2463 et seq. and Sections 2471-2474; Kentucky Statutes Supplement 1924, Section 2479a-5).—In proceedings for receiver of oil company, in which creditors were required to file claims, the court erred, under Kentucky Statutes Supplement 1924, section 2479a-5, in dismissing claims of lien claimants, who had furnished supplies and acquired liens therefor by compliance with Kentucky Statutes, sections 2463 et seq., especially sections 2471-2474, without affording claimants an opportunity to prove claims before receiver as master commissioner.

4. Receivers—Court Had no Jurisdiction of Claim Not Filed, Though Claimant Had Joined in Motions.—In receivership proceedings, court had no jurisdiction of claim of party which had joined in motions of other claimants but had not itself filed a claim.

5. Receivers—Judgment Dismissing Unfiled Claim of One Not Party to Proceeding is Void.—Judgment in receivership proceedings dismissing claim was void where claim was not filed and claimant was not a party to proceeding.

6. Appeal and Error—Appeal from Void Judgment Must be Dismissed, in Absence of Motion in Lower Court to Vacate Judgment (Civil Code of Practice, Section 763).—Under Civil Code of Practice, section 763, appeal from judgment, void for want of jurisdiction, will be dismissed, where no motion to set aside judgment was made in lower court.

7. Receivers—Judgment Ordering Receiver's Sale, Free of Nonresident's Claim, Without Proof Thereof or Bond, Held Error, Where Service was Constructive (Civil Code of Practice, Section 126, Subdivision 3, and Section 410).—Judgment ordering receiver's sale, free from claim of nonresident, not summoned but proceeded against by warning order, without hearing proof as to claim under Civil Code of Practice, section 126, subdivision 3, or requiring bond under section 410, held error.

8. Receivers—Allowance of Compensation to Receiver in Absence of Affidavit Held Error (Kentucky Statutes, Section 396).—Allowance of compensation to receiver, who did not file affidavit required by Kentucky Statutes, section 396, held error.

9. Receivers—Allowance of Fees to Receiver's Attorney in Absence of Showing as to Services, Held Improper.—Allowance of fees to

receiver's attorney, in absence of showing as to extent or character of services, held error.

10. Mines and Minerals—Attachments on Oil Lease and Wells Held Inferior to Mechanics' Liens (Kentucky Statutes Supplement 1924, Section 2479a-1 et seq.).—Attachments in oil lease and wells held inferior to mechanics' liens for supplies, under Kentucky Statutes Supplement 1924, section 2479a-1 et seq.

11. Receivers—Judgment Sustaining Claim in Receivership Proceeding Affirmed, in Absence of Record Showing that Claim was Traversed.—In receivership proceeding, judgment sustaining claim will be affirmed where record does not show that claim was traversed.

12. Banks and Banking—Affidavit of Bank's Cashier, With no Explanation of Failure of Other Officers to Sign, Held Insufficient (Civil Code of Practice, Section 732, Subdivision 33).—Affidavit in attachment, signed by cashier of bank, with no explanation of failure of officers of higher rank to sign it, as required by Civil Code of Practice, section 732, subdivision 33, held insufficient.

13. Appeal and Error—Record Should be Prepared in Accordance with Rules of Court of Appeals.—Circuit court clerk in preparing record should comply with rules of Court of Appeals.

WAUGH & HOWERTON and M. C. REDWINE for appellants.

M. M. REDWINE and JOHN T. REDWINE for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

On June 30, 1924, the appellees, Albert Gilliam and John M. Ison, filed their respective suits against the Sandy River Oil Company seeking to recover from the oil company $244.73 and $318.30, respectively, for work and labor done for the company. On August 21st of the same year the appellee, the Sandy Hook Bank, filed a suit against the oil company to recover the sum of $770.35, for money loaned the oil company. Each of these three plaintiffs on the filing of their respective suits procured an order of attachment, which was duly levied by the sheriff on the oil lease and oil wells owned by the oil company in Elliott county. The affidavit on which the attachment in the bank's case was issued was sworn to by the cashier of the bank, the affidavit being silent as to why the president or other officers of the bank, who, according to subsection 33 of section 732 of the Civil Code, outrank the cashier as the chief officer of the corporation within the Code requirement that affidavits of a corporation must be signed and sworn to by the "chief officer" of such corporation, did not sign the affidavit.

On August 13 following the oil company filed its answer in the Gilliam and the Ison suits traversing the petitions, and at the same time it filed motions to discharge on the face of the papers the attachments sued out in these suits. These motions the court subsequently overruled.  We are unable to find in this record any answer filed in the suit of the Sandy Hook Bank or any motion made therein to discharge the attachment, although it is true that on page 36 of the record we find an order of the court overruling such a motion.  On September 15, 1924, H. L. Claiborne, the president, general manager, director and majority stockholder of the oil company filed his petition in equity seeking a receiver for the oil company on the ground that it was hopelessly insolvent and that a receivership was necessary to preserve its assets for the creditors and stockholders.  He asked that all the creditors be required to present their claims in this suit; that the Gilliam, Ison, and the Sandy Hook Bank suits be consolidated with this receivership suit; that the assets of the company be sold and the proceeds used to satisfy its creditors as far as they would do so.

The court appointed the appellee V. H. Redwine receiver of the company, and he took charge of its oil wells in the fall of 1924.  On October 27, 1924, the appellant Continental Supply Company filed its intervening and cross-petition by which it claimed a mechanic's lien on the leasehold in question for supplies furnished in the development of that leasehold.  This intervening petition alleged that the plaintiff supply company had ceased in September, 1924, to furnish the supplies it had furnished under a contract it had with the oil company, and that within 6 months thereafter, and in that month, it had filed with the county clerk of Elliott county the statement required by the applicable mechanic's lien law, being section 2479a-3 of the statutes.  On November 10, 1924, the court set aside the order filing the intervening petition of the Continental Supply Company.  No reason is given nor have we been able to find one for this action of the court.  The intervening petition plainly stated a cause of action, and if the Continental Supply Company could establish its allegations with proof, it was a lien creditor of the oil company and a necessary and proper party to this suit wherein it was sought to sell the assets to which this lien, if established, attached.  For some unexplained reason Gilliam, Ison, and the Sandy Hook

Bank thereafter each filed an answer traversing the intervening petition of the Continental Supply Company, and the court and all the parties thereafter treated the supply company as a party litigant; indeed, the supply company, after the order setting aside the filing of its intervening petition had been entered, went right ahead as if this order had never been entered, made motions, filed exceptions to reports, and conducted itself just as a party to the suit would have done.

It is plain then that the order setting aside the filing of the intervening petition was ignored by everyone and the court, and that the supply company was treated as a party to the suit. Hence this case must be treated here as did the court and the parties below, and the supply company must be held to have been a party to this suit and its petition treated as filed. Cf. Briggs v. Muir, Wilson and Muir, 204 Ky. 135, 263 S. W. 740. On the 30th of May, 1925, appellant Henry Dickason filed his intervening petition in which he set up a mechanic's lien similar to the one asserted by the supply company for the work done by him in the drilling of certain wells on the leasehold under a contract he alleged he had with the oil company. He averred that the last work he had done on these wells was completed about the 1st of June, 1924, and that on August 11, 1924, and within 6 months after he had ceased drilling, he had filed with the county clerk of Elliott county a statement of his lien as required by the applicable mechanic's lien law, to which we have referred. Gilliam, Ison, and the bank on August 10, 1925, each filed an answer traversing the intervening petition of Henry Dickason. In the meantime it seems that the oil which was being pumped by the receiver from the wells of the oil company was barely sufficient to pay the cost of operating the wells, and on a report of the receiver recommending a sale of the leasehold the court finally ordered it sold. It appears that in Henry Dickason's intervening petition he alleged that a certain nonresident, Coggeshall by name, was claiming an interest of record in this leasehold, and Dickason asked that Coggeshall be made a party defendant and called on to set up whatever claim he had. This the court did. At the sale the leasehold brought but $2,000.00. On exceptions this sale was set aside and another sale ordered. On the second sale the leasehold again brought but $2,000.00. On May 5, 1926, the supply company, Dickason, and the Kentucky

Glycerine Company filed exceptions to the confirmation of this sale. In these exceptions these parties *inter alia* alleged that they had not had their claims, which were valid, adjudicated, and had had no opportunity to have the court pass on the many contested rights of the various claimants in this litigation. Other reasons were assigned for setting aside the sale. The next day the court overruled the exceptions and then entered a judgment dismissing for want of proof the petitions of the Continental Supply Company, of Henry Dickason, and of the Kentucky Glycerine Company, who so far as we are able to determine from this record, never had filed any petition or claim which the court could dismiss. Where the court found any asserted claim of the Kentucky Glycerine Company to dismiss we are utterly at a loss to understand. This judgment allowed the receiver for his services $300.00 in addition to an allowance of $200.00 theretofore made him. It also allowed the appellee M. M. Redwine, who had been appearing as attorney all along for Gilliam, Ison, and the bank, and who, so far as this record shows, never did a minute's work for the receiver or advised him in any way, the sum of $200.00 for services as attorney for the receiver. The judgment also awarded to Gilliam, Ison, and the bank the sums they respectively sought, and adjudged them attachment liens superior to all other claims against the assets of the company and directed the receiver to pay them as such. It also confirmed the sale of the leasehold. From this judgment the Continental Supply Company, the Kentucky Glycerine Company, and Henry Dickason have appealed.

By section 2479a-5 of the statutes, being section 5 of chapter 69 of the Acts of 1924, it is provided that actions to enforce liens declared in this act shall be by equitable proceedings and conducted as other proceedings in equity in similar cases. This act extends to those who perform labor or furnish material and supplies in the development of oil leases a lien on the leasehold to secure the payment for such labor, material, and supplies. This lien is exactly like the ordinary mechanics liens provided for by sections 2463, et seq., of the statutes. Indeed, the 1924 act is a literal copy with the changes necessary to make it applicable to oil leaseholds of the mechanic's lien statute as we now have it in section 2463, et seq., of the statutes. One of the provisions of the ordinary mechanic's lien statute relating to procedure found

in section 2471 of the statutes is that which requires the clerk of the court in which a mechanic's lien suit is filed or pending to enter an order within 10 days after the petition is filed referring the case to the commissioner of the court, and then to deliver to the commissioner the pleadings and papers in the suit. Sections 2472, 2473 and 2474 of the statutes then prescribe what the commissioner shall do.

Section 2472 provides:

"It shall thereupon be the duty of the commissioner, at once, to ascertain the names of the persons who have filed liens with the clerk of the county court against the property sought to be subjected, and he shall fix a time and place at which he will hear proof touching claims against the property. All persons holding liens against the property, whether arising under the provisions of this chapter or otherwise, are required to present the same, with the evidence in their support, to the commissioner. The owner of the property, or any other person whose interest may be affected by the suit, may contest any claim presented."

Section 2474 provides:

"The commissioner shall give reasonable written notice to both plaintiffs and defendants and to any other lienholders known to him, or such of them as reside in his county, or to their attorneys, of the time and place of receiving proof of claims as prescribed in section 2472 of this chapter, and shall also post a similar notice on the front door of the court house of his county."

As stated, section 5 of chapter 69 of the Acts of 1924 provides that actions to enforce liens created by that act shall be conducted as other proceedings in equity in similar cases, and since the 1924 act is practically identical in its wording and purpose with the ordinary mechanic's lien law to which we have referred, it follows that the procedure of this ordinary mechanics's lien law should be followed in enforcing liens under the 1924 act. In the case before us, when the supply company or Henry Dickason filed its or his intervening petition asserting their mechanics' liens under the 1924 act, the clerk should then have referred by order the case to the master com-

missioner of the court. This he never did, but a reading of the record shows that the case was referred to the receiver for the purpose of receiving claims, and so we may treat this case as though the receiver stood in the shoes of the master commissioner. So far as this record shows, however, the receiver never did anything the statute requires about receiving claims and hearing proof upon those contested. He never made any report about claims. We have quoted above from the exceptions to the report of sale filed by the supply company, Dickason, and the Kentucky Glycerine Company, that part which recites that they had had no opportunity to have their claims adjudicated. There is nothing in the record to contradict this statement, and, although they made this showing to the court on May 5, 1926, he proceeded on the next day to overrule such contention and at once entered the judgment from which this appeal is taken. In the case of Carl v. Grosse, 23 Ky. L. R. 1586, 65 S. W. 604, we held that where in a mechanic's lien suit the master commissioner had failed to give one asserting a lien notice of the time and place when proof in support of the claimed lien would be heard, and because of such failure the claimant presented no such proof and thereafter the commissioner rejected the claim for want of such proof and so reported to the court, it was error for the court to overrule the claimant's exceptions to such report and to deny the claimant opportunity to present its proof. In the absence of any showing to the contrary, we must take the statement of the supply company, Dickason, and the Kentucky Glycerine Company to the effect that they had had no opportunity to have their claims adjudicated as true, and that the receiver acting as the master commissioner had failed to notify them of the time and place when he would receive proof. In such state of case it was the duty of the court to require the receiver, acting as a master commissioner, to perform the duties enjoined upon him by law, and it was error for the court to dismiss immediately, as it did, the claims of the supply company and Dickason for want of proof. For which reasons, the judgment dismissing the claims of the supply company and Dickason are reversed.

However, so far as the Kentucky Glycerine Company is concerned, we shall have to dismiss its appeal. We cannot find in the record any claim asserted by it or that it was a party to this suit, although it joined in some of the motions of the supply company and Dickason. In such

a state of the record the court had no jurisdiction of any claim of the Glycerine Company, and its judgment is void. But no appeal lies from a void judgment until a motion to set it aside is made in the circuit court. Civil Code, section 763; Janin v. Logan, 209 Ky. 811, 273 S. W. 531; Wales v. Williams, 216 Ky. 260, 287 S. W. 705. The appeal of the Kentucky Glycerine Company is therefore dismissed.

The judgment so far as it ordered a sale of the leasehold will also have to be set aside. Coggeshall, a nonresident defendant, who, it was alleged, was claiming an interest of record in this leasehold, was never summoned but was proceeded against by a warning order. He made no defense to the action. The judgment adjudged that he had no claim to the leasehold, and this without proof as required by subsection 3 of section 126 of the Civil Code. The sale was ordered, and the judgment which confirmed the sale of the leasehold free from any claim of Coggeshall was entered without the bond required by section 410 of the Civil Code. In the case of Webber v. Tanner, 23 Ky. L. R. 1694, 65 S. W. 848, we held that it was reversible error to order a sale of real property which divested a nonresident defendant, constructively summoned, of any interest he had therein without the bond called for by section 410 of the Civil Code being executed.

Appellants in their exceptions to the report of sale averred that the leasehold had not brought its true value at the sale due to the cloud upon its title caused by this alleged outstanding claim of Coggeshall which had not been legally removed or barred. There is nothing in the record to gainsay this statement of appellants, and as they are vitally interested, if they establish their claims, in seeing that the leasehold brings its full value, it follows that they have a right to object to this erroneous sale. Therefore the judgment in so far as it confirmed the sale of the leasehold is reversed, with instructions to set aside the sale, to hear proof on Coggeshall's alleged interest, and then on the proper bond being executed to order a resale.

The judgment in so far as it made the allowances it did to the receiver and the appellee M. M. Redwine as attorney for the receiver will also have to be reversed—as to the receiver, because he failed to file the affidavit required by section 396 of the statutes, and failed to make any showing about the extent or character of his services;

as to the attorney for the receiver, because, conceding without deciding that he could occupy the possible antagonistic positions of attorney for creditors and attorney for receiver, there is nothing in the record to show that he ever did anything for the receiver.

The judgment in so far as it awarded Gilliam and Ison the relief they sought will also have to be reversed, because their claims were traversed and they offered no proof in support thereof.  Further, even though on a retrial they established their claims and their attachments are then sustained, these attachments will be inferior to the mechanics' liens of the supply company and Dickason if these claimants establish the same as alleged by proof, as such attachments will be also to any other like valid mechanics' liens established in this case.  It was expressly so decided in the similar case of Norton's Assignee v. Hope Mining and Lumber Co., 101 Ky. 223, 40 S. W. 688, 19 Ky. L. R. 382.

The judgment, however, in so far as it awarded the Sandy Hook Bank a judgment on its claim, is affirmed, because we cannot find anywhere in this record where it was traversed.  But in so far as it sustained the attachment of the bank, it will have to be reversed.  We have called attention to the fact that the affidavit on which the attachment issued was signed by the cashier without any explanation of why those who outrank the cashier, as provided in subsection 33 of section 732 of the Civil Code, did not do so.  Under exactly similar circumstances we held in First National Bank v. Sanders Bros., 162 Ky. 374, 172 S. W. 689, that the affidavit signed by the cashier on which an order of attachment issued was invalid.  The affidavit being invalid, the court should have discharged the attachment of the bank.

The next time the clerk of the Elliott circuit court prepares a record for this court, we suggest that he read or re-read rule 3 of this court, and especially subsections 2 and 5 of that rule.  We have had a very difficult task in arriving at the merits of this case due to the way it was practiced in the lower court, and our labors were much heightened by the way the clerk prepared this record, due, no doubt, to his unfamiliarity with our rules, and especially those particularly cited.

It is our order then that: The judgment (1) in so far as it dismissed the petitions or claims of the supply company and Dickason, be reversed, with instructions to the

court to require the receiver acting as a master commissioner to hear proof on all claims filed with him after having given to the claimants the notice required by law, and to report upon the same as required by the statutes; (2) in so far as it ordered a sale of the leasehold or confirmed that sale be reversed, with instructions to proceed in this matter in conformity with this opinion; (3) in so far as it made any allowances to the receiver or M. M. Redwine be reversed, with instructions to permit them to make such proof as they can regarding their services; (4) in so far as it awarded a judgment in favor of Gilliam and Ison and sustained their attachments be reversed, with instructions to permit them to take proof on their claims and for the receiver to report in accordance with the principles of this opinion the priorities between these attaching creditors and such mechanics' liens as may be established; (5) in so far as it awarded a judgment in favor of the Sandy Hook Bank on its claim is affirmed, but as far as it sustained the attachment of the bank is reversed, with instructions to discharge said attachment. The appeal of the Kentucky Glycerine Company is dismissed.