## Fourseam Block Collieries Co. v. John P. Gorman Coal Co. et al.

(Decided March 5, 1935.)

C. S. LANDRUM for appellant.

C. F. KELLY and W. W. REEVES for John P. Gorman Coal Co. and J. N. Owens.

HENRY McGUIRE for Gorman Coal Sales Co.

JESSE MORGAN for Hazard Coal Corporation.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

On November 1, 1915, the Hazard Coal Corporation, which owns a large acreage of coal land in Perry and other counties in Kentucky, leased a block of its undeveloped land on Buffalo creek in Perry county to certain individuals who proposed to and did thereafter organize a corporation known as the Fourseam Block Collieries Company. It was agreed in the lease that, when the corporation was so organized and surveys by

accurate metes and bounds had been completed, a formal lease between the lessor and the company would be entered into and the lessees would be relieved of all personal responsibility thereunder. Pursuant to that provision, the Hazard Coal Corporation did make a formal lease of the property on the 1st day of September, 1921, to the Fourseam Block Collieries Company, hereinafter called the Collieries Company, for a period of 100 years beginning November 1, 1915. In the meantime, the Collieries Company had spent approximately $200,000 in opening, developing, and equipping a mine on the property. It was provided in the lease that the lessee should pay to the lessor as rent a royalty of 10 cents per ton for coal mined thereunder, with a further provision that for the calendar year 1921, and for each calendar year thereafter the lessee should pay to the lessor as a minimum annual rental $12,000 in monthly installments of $1,000. The lessor reserved all rights and remedies of a landlord under the laws of Kentucky for the collection of the rentals, etc., with a proviso that, if any of the royalties or rentals should remain unpaid for 30 days after same became due, the lessor should have the right to enforce the payment of same by the remedies given by law respecting rentals against delinquent tenants for nonpayment of rent.

On November 15, 1921, the Collieries Company subleased this block of coal land, together with the equipment thereon, to the J. P. Gorman Coal Company, a corporation, hereinafter referred to as the Gorman Company, which thereafter operated the mines until it went into the hands of a receiver in April, 1932. Under the latter lease the Gorman Company assumed and agreed to perform all the obligations of the Collieries Company to the Hazard Coal Corporation under the original lease with respect to the payment of royalties, rentals, etc., and in addition agreed to pay to the Collieries Company the same royalties and rentals as were to be paid to the Hazard Coal Corporation. The Hazard Coal Corporation consented to this sublease of the property, with the understanding, however, that the Collieries Company was not to be released of any of its liabilities or obligations under the original lease. Under the terms of the sublease it was provided that it should be forfeited and terminated in the event the Gorman Com-

pany failed for as much as 30 days to comply with any of the stipulations on its part to be kept and performed, and in such event the Collieries Company should have the right to terminate the sublease and to the repossession of all its property by giving the Gorman Company 10 days' notice of its intention so to do.

Because of difficulties in marketing its coal and financing its operations, the Gorman Company entered into a contract with the Gorman Coal Sales Company, a corporation, hereinafter called the Sales Company, by which the latter attempted to assume these burdens. The Gorman Company and the Sales Company each had a home office and principal place of business in Lexington, Ky.

On April 28, 1932, the Gorman Company filed an ex parte petition in the Fayette circuit court alleging in substance that it mined large amounts of coal, which, because of depressed business conditions, it was unable to sell; that it was heavily in debt, but that its assets largely exceeded its liabilities; that its creditors were pressing it for payment, and, unless it was granted the relief sought, its property would be sacrificed and its creditors would not be paid in full, and some would gain advantage to the prejudice of others; that, if a receiver was appointed and the mine operated efficiently, the debts could all be satisfied and a surplus left. The petition set forth a list of the plaintiff's creditors, and alleged that, because of the number of them, it was impossible and impractical to make them parties to the action in time to have the relief necessary to protect them. The prayer of the petition was for the appointment of a receiver to take charge of all the property and assets of plaintiff, and that such receiver be given full power and authority to operate the mine and to do all things necessary to that end, and that all creditors, stockholders, and other persons be enjoined from prosecuting actions againt the plaintiff.

On the same date the petition was filed, the Bryant-Hunt Company, a corporation, and creditor of plaintiff, filed an intervening petition setting up its account of $150.88 and alleging that plaintiff was indebted to various creditors in sums aggregating $20,000, most of which was overdue, but that it had numerous profitable accounts which could be collected in a short time and

had two profitable mining operations where large quantities of coal might be produced and sold if it were permitted to operate. It joined in the prayer of the petition for the appointment of a receiver.

After the filing of these pleadings, the court, upon hearing of a motion for the appointment of a receiver, entered an order appointing J. N. Owens receiver of the Gorman Company, and he thereupon qualified and took charge of the mining property.

On May 14, 1932, the Hazard Coal Corporation entered a motion requesting the court to revoke and vacate the order of April 28, 1932, appointing a receiver in so far as the order affected property covered by the above mentioned leases, because (1) the receivership embraced two mines, one known as the Klenkole Mining Company, in which movant had no interest, and the other located on Buffalo creek on the land owned by the Hazard Coal Corporation and covered by the leases hereinbefore set out; (2) the order appointing the receiver was upon an ex parte proceeding without the hearing of evidence and without notice to the Hazard Coal Corporation; (3) the receiver was an employee of the Gorman Company; (4) the order appointing the receiver was too broad in its terms conferring authority upon the receiver in the operation of the mine.

On the same date the Hazard Coal Corporation filed its answer, counterclaim, and cross-petition in which it set up the same grounds for the removal of the receiver and further set out the provisions of its lease to the Collieries Company and the Collieries Company's sublease to the Gorman Company with respect to the payment of the rents and royalties to it, and alleged that under the terms of these instruments it had a lien on all equipment, improvements, etc., placed on the leased premises by the Collieries Company and the Gorman Company; that there was due from the lessee and sublessee as rents and royalties under these instruments the sum of $5,825.50 and the minimum royalty of $1,000 per month which would accrue from month to month. It further alleged that on February 10, 1931, the Gorman Company executed a mortgage to John P. Gorman to secure a note of even date therewith for $36,225.44, which embraced all of the mining equipment and improvements on the land covered by the leases herein-

before referred to; that this mortgage had been assigned by J. P. Gorman to the Gorman Sales Company; that it was executed in contravention of the provisions of its lease to the Collieries Company and of the sublease to the Gorman Company, and was executed for the purpose of attempting to defeat its lien referred to in the lease contract to secure payment of its rental and royalties. It further alleged that the Gorman Company was insolvent. It asked that summons issue on its cross-petition against the Collieries Company and the Gorman Sales Company; that the order appointing J. N. Owens, receiver, be set aside and held for naught in so far as it affected its properties; that a receiver be appointed by the court to take charge of its property as described in the pleadings and all improvements placed thereon by the Collieries Company and the Gorman Company, and that such receiver be a person not connected in any way as an officer, director, or in the employment of the Gorman Company, the Collieries Company, or the Hazard Coal Corporation or any other party directly or indirectly interested: that the mortgage from the Gorman Company to J. P. Gorman be held for naught in so far as it affected any of the leased premises belonging to the Hazard Coal Corporation or any improvements thereon; that it be adjudged a superior lien on all the improvements situated on the leased premises set forth in the pleading to secure all rents and royalties due at the time of the filing of plaintiff's petition and all rentals accruing under its lease contracts thereafter until it be restored to the possession of its leased premises; that all property situated on such leased boundaries be sold as a whole to satisfy its liens and any other liens; and that upon final hearing the leased premises be restored to it.

On June 29, 1932, the Collieries Company moved the court to set aside the order appointing J. N. Owens receiver because the pleadings did not authorize the appointment of a receiver and for other reasons which it is unnecessary to enumerate. It also filed an answer in which it set up the provisions of its sublease to the Gorman Company with respect to the payment of rentals and a provision that the lessee should not assign, convey, lease, underlease, sublet, or set over any of its assets or interests under the lease without the written

consent of the lessor, and it further set up the mortgage from the Gorman Company to John P. Gorman referred to in the answer of the Hazard Corporation. It alleged that the Gorman Company, was indebted to it in the sum of $4,944.33 for rental and royalties, and had failed and refused to pay same, although repeated demand had been made for payment; that, at a time when the failure of the Gorman Company to perform the obligations of the sublease contract had existed for more than 30 days, it caused to be served on the president of the Gorman Company written notice of its intention to terminate the sublease contract of November 15, 1921, and that this notice was brought to the attention of the receiver theretofore appointed for the Gorman Company. It prayed that the sublease contract be declared null and void and that it be given immediate possession of the premises conveyed thereby, free of all liens and free of the costs of this action or of the cost of the receivership, and that the mortgage from the Gorman Company to J. P. Gorman and the assignment thereof to the Sale Company be declared null and void; and for judgment against the Gorman Company for the sum due it for rental and royalties as set forth in the petition, and that it be adjudged a lien upon the property of the Gorman Company on the leased premises to secure the payment of same.

After plaintiff had filed a reply to the answer and cross-petition of the Hazard Coal Corporation and the Sales Company had filed an intervening petition setting up its contract with plaintiff and its rights under it, and proof had been heard by the court on the motion to vacate or modify the order appointing the receiver and an order entered referring the case to a special commissioner to hear proof on the questions presented by pleadings, an appeal was prosecuted from the order referring the case to the special commissioner.

This court in an opinion found in 249 Ky. 710, 61 S. W. (2d) 28, dismissing the appeal, held that the motion to vacate the order appointing the receiver suspended the right of appeal until such motion was acted on or withdrawn and that an order merely referring a case to a commissioner to take proof was not appealable.

On return of the case to the lower court, further pleadings were filed, the issues were completed, proof was heard, and the special commissioner filed his report.

By subsequent judgment and order, the court overruled exceptions to and confirmed the report of the special commissioner, overruled the motion to remove the receiver theretofore appointed as well as the motion of the Collieries Company for an order directing the receiver to return to it all the property held by the Gorman Company under the sublease, and adjudged that the Hazard Coal Corporation had a landlord's lien upon the rights, title, and interest of the Gorman Company in and to such property, and that the Collieries Company had a lien thereon, inferior, however, to the landlord's lien of the Hazard Coal Corporation; that the Sales Company had a mortgage lien upon the right, title, and interest of the Gorman Company in and to the property, inferior to the above-mentioned landlord's liens; that the state and county of Perry had tax liens against the property, and that the Workmen's Compensation Board and certain individuals had statutory liens under the workmen's compensation laws; that the court, being unable at the time to ascertain the amounts, dignities, and priorities of the liens or whether other liens existed, reserved such questions for further adjudication. It was further adjudged that all rights, title, and interests of the Gorman Company and the Collieries Company in and to the lease dated September 1, 1921, and the lease contract dated November 15, 1921, together with all improvements, machinery, etc., belonging to the Collieries Company or the Gorman Company, be sold by the special commissioner at the courthouse door in Hazard, and that the stock of goods, furniture, and fixtures in the commissary building on the leasehold be sold by the special commissioner at the commissary building. The Collieries Company reserved exceptions to all these orders and judgment of the court and is prosecuting this appeal.

As grounds for reversal it is argued (1) that the order appointing J. N. Owens receiver was void, or (2) if not void, was erroneous; (3) that, because of the failure of the Gorman Company to comply with the terms and conditions of the lease and sublease and the notice given by appellant of its election to terminate

the lease, the Gorman Company had no right, title, or interest in the property in controversy, and the court erred in adjudging a sale of it; (4) that the court was without jurisdiction to order a sale of the property in Perry county.

The first two grounds raised by appellant may be discussed together. These grounds are rested on the theory that the petition of the Gorman Company and the intervening petition of the Bryant-Hunt Company were not sufficient to authorize the appointment of a receiver; however, subsequent pleadings and proof clearly reveal a situation and circumstances that would authorize such action upon the part of the court. Practically the same situation was presented to this court in the case of Wakenva Coal Co. v. Johnson et al., 234 Ky. 558, 28 S. W. (2d) 737, wherein it was adjudged that the order appointing a receiver without notice to the defendant was void and should be set aside. The court, after a review of authorities on the question of necessity of notice to defendants, quoted with approval from Wilson v. Jonas, 8 Ky. Law Rep. 510, wherein it was said:

> "To authorize the appointment of a receiver without notice to the defendant, it must appear that the short delay required to give notice will result in irreparable injury to the applicant.
>
> "An order appointing a receiver may be erroneous, but is never void, for want of notice to the defendant."

It was held in effect that, even though the court might have acted prematurely and without authority in appointing a receiver, facts later made to appear to the court warranted the appointment of a receiver, and in such circumstances it would have been idle for the court to have rescinded its previous orders and at the same time make an order appointing the receiver again.

Here the Hazard Coal Corporation asked that the order appointing Mr. Owens as receiver be set aside but that another receiver be appointed. The Gorman Company by its pleadings finally admitted that it was insolvent. It was shown by the pleadings and proof, and is a matter of common knowledge, that mine prop-

erty depreciates rapidly when allowed to remain idle. There is no allegation or proof that Mr. Owens was not qualified or that he did not faithfully and honestly discharge his duties as receiver unless such inference be drawn from the fact that he was an employee of the Gorman Company. It appears in the record that, some time during the consideration of hearing of the motion for his removal, attention was called to the fact that he had claim against the Gorman Company, but he waived, and did not assert, this claim. Regardless of whether the order appointing the receiver was prematurely made, later developments did warrant and authorize such action upon the part of the court, and a consideration of the entire record in the light of the Wakenva Coal Company Case leads to the conclusion that this court would not be authorized in now disturbing the orders complained of, since such action would result in confusion and entail unnecessary additional cost without serving any good purpose or protecting any rights of the parties in interest.

Little need be said concerning the third ground argued by counsel for appellant. As between it and the Gorman Company there might have been some merit in this contention, but we need not enter into a discussion as to the nature and effect of the sublease as between these parties. Under the original lease, as well as the sublease contract, the Hazard Coal Corporation had a lien upon all the improvements which had been placed upon the leased premises by the Collieries Company and the Gorman Company to secure the payment of rentals and royalties, and the Hazard Company had a right to assert and have its lien enforced. Under the pleading and proof, the court properly adjudged a sale of the property to satisfy this lien indebtedness and to later determine the rights of the parties respecting priority of liens.

When we come to a consideration of the fourth ground urged for reversal, we find the parties citing authorities pro and con concerning the right of the Fayette circuit court to adjudge a sale of the property in Perry county to satisfy the lien claims asserted. Counsel for appellee cite cases clearly indicating that the court was vested with such authority; however, neither side calls attention to section 65 of the Civil

Code of Practice, and all the cases cited by appellee involving the question were decided prior to the amendment of this section of the Code by chapter 59, p. 149, Acts of 1898. That section as amended provides in effect that an action to settle the estate of a deceased person, of a person, corporation, or company assigned for the benefit of creditors of any estate in the hands of a receiver should be brought in the county in which the personal representative or receiver qualifies, but that, in such suits for the enforcement of mortgage or other liens upon real estate, the court shall by proper order transfer for hearing and trial so much of the record as may be necessary for the enforcement of such liens to the circuit court of the county in which such real estate or any part thereof is situated. It is unnecessary to determine whether under the Code provision the court might properly have transferred so much of the record as was necessary for the enforcement of the liens on realty in Perry county to the circuit court of that county, since the Fayette circuit court had jurisdiction to appoint a receiver and appellee voluntarily submitted itself to the jurisdiction of that court without making any question or objection as to venue. A similar question was presented in the case of Susanne de Charette v. St. Mathews Bank & Trust Co., 214 Ky. 400, 283 S. W. 410, 412, 50 A. L. R. 34, where the court, in construing sections 62-77 of the Civil Code of Practice, quoted with approval from Gillen v. I. C. R. Co., 137 Ky. 375, 125 S. W. 1047, wherein it is said:

"The purpose of sections 62-77 of the Code is not to regulate the jurisdiction of courts. The Code of Practice does not treat of the jurisdiction of courts or attempt to regulate it. It simply regulates the procedure in civil actions. The purpose of these sections of the Code, as shown in the title, is to regulate the county in which the action may be brought; or, in other words, the venue of actions."

Following the quoted excerpt, the opinion with respect to the rule thus enunciated said:

"The rule rests upon the broad ground that, the court being one of general jurisdiction, and the parties being before the court, and submitting their case to it without objection, cannot be heard to

complain that the action was not brought in the proper county.''

These authorities are conclusive and demonstrate beyond doubt that appellant's position cannot be sustained.

Judgment affirmed.