### Briggs, et al. v. Wilson & Muir, et al.

### Briggs, et al. v. Citizens' Bank of Bloomfield, et al.

(Decided July 1, 1924.)

## Appeals from Nelson Circuit Court.

1. Fraudulent Conveyances—One Not Innocent Purchaser for Value Unless he Parts with Something of Value.—As against creditors, one is never an innocent purchaser for value unless he parts with something of value.

2. Fraudulent Conveyances—Conveyances Not put of Record Not Good Against Creditors.—Contract to convey and conveyance of

land were not good against creditors, where not put of record, under Ky. Stats., section 496.

3. Fraudulent Conveyances—Conveyances Held Voluntary.—Where only consideration for mother's conveyances to her daughter was an unrecorded contract to convey in order to equalize the daughter with a son, and the daughter's agreement to pay lien indebtedness, which did not equal value of property, and which she had not paid, the conveyances were voluntary and void as to creditors.

4. Fraudulent Conveyances—Immaterial that Grantee Not Paying Value Without Knowledge of Fraudulent Intent.—It is immaterial that grantee not purchaser for value did not know of fraudulent intent of grantor.

5. Appeal and Error—Premature Submission of Case Not Prejudicial.—Defendants were not prejudiced by premature submission of case, where case was ready for trial, though a few additional pleadings were filed which did not change issues in any substantial way.

6. Action—Principal and Surety—Creditors Need Not Exhaust Remedies Against Bankrupt Principal.—One signing note as surety was primarily liable, and creditors had a right to proceed against her and principal jointly or severally as they saw fit, and mere filing of claims in bankruptcy proceedings against principal did not suspend their right to proceed against surety until bankruptcy proceedings were ended.

7. Appeal and Error—No Reversal Because One Treated as Party Not Formally Made Party.—A judgment will not be reversed because one petitioning to be made a party and treated as a party below was not made party by formal order.

8. Fraudulent Conveyances—Immaterial that Sale Advertised in Names of Parties in Only One of Several Consolidated Suits.—Where a number of suits to set aside conveyances as fraudulent were consolidated, it is immaterial that sale of land under order of court was advertised in names of parties in only one of suits, instead of in names of parties to all of suits.

9. Fraudulent Conveyances—Notice of Sale Held Sufficient.—A notice of sale of land in a suit to set aside fraudulent conveyances sufficiently showed whose land was being sold, where it described the land by metes and bounds and courses and distances and stated the number of acres in each tract.

10. Fraudulent Conveyances—Failure to State Proper Amount of Debts and Costs did Not Render Sale Void.—Sale by order of court in suits to set aside conveyance as fraudulent was not invalid because notice of sale, which stated amounts of different debts, did not correctly state aggregate amount of money for which lands were to be sold or amount of money to be raised or produced by sale, due to typographical error, and did not state amount of costs.

11. Fraudulent Conveyances—Sale Not Invalid Because One of Appraisers Interested.—A sale of land under order of court in suit

to set aside fraudulent conveyances was not invalid because one of appraisers was not "disinterested," in that he expected to bid on property.

12. Judicial Sales—Commissioner should Accept Best Bid and Give Bidder Time to Execute Bond Except where Financial and Moral Standing Bad.—Ordinarily, commissioner should accept best bid and give bidder reasonable time in which to execute good bond, but need not do this if financial and moral standing of bidder are such as to make it highly improbable that any one will go on his bond.

13. Judicial Sales—Price Held Not so Inadequate as to Invalidate Sale.—Where one witness valued land at $120.00 an acre and other witnesses fixed its value at from $80.00 to $100.00 an acre, $97.00 an acre held not so inadequate as to invalidate sale, alone or in connection with other irregularities:

OSSO W. STANLEY for appellants.

FULTON & FULTON, J. SMITH BARLOW and NAT W. HALSTEAD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in each case.

These two appeals, one from a judgment setting aside as fraudulent a conveyance by appellant, Caroline T. Briggs, to her daughter and co-appellant, Obie Whitesides, and ordering a sale of the property to satisfy the claims of creditors, and the other from a judgment overruling exceptions to, and confirming the report of sale, will be considered in one opinion.

1. In the year 1911 John Briggs died, the owner of about 290 acres of land in Nelson county. He was survived by his widow, Caroline T. Briggs, and two children, Obie Whitesides and Muir Briggs. In the division of his land Mrs. Briggs was awarded 122.45 acres, the daughter 83 acres, and the son 84.57 acres. The mother subsequently purchased the son's land, and he acquired his sister's tract. In the year 1916 Mrs. Briggs, having made considerable advancements to her son, executed and delivered to her daughter a contract by which she, in consideration of love and affection, and in order to equalize her two children in advancements, agreed and promised to convey to her daughter a sufficient quantity of land for that purpose. On May 6, 1921, Mrs. Briggs signed and delivered to her daughter a deed to the 84.57 acre tract. The consideration was one dollar and other valuable considerations and the assumption of a mortgage indebted-

ness of $3,300.00 to Ben F. Brown and wife. Neither the contract nor the deed was recorded. On January 27, 1922, Mrs. Briggs executed, acknowledged and delivered a deed by which she conveyed to her daughter both the 122.45 acre tract and the 84.57 acre tract. The recited consideration was an assumption by the grantee of a mortgage indebtedness of about $9,000.00, love and affection and other valuable considerations.

When the conveyances of 1921 and 1922 were made, Mrs. Briggs was heavily in debt, the principal portion of which was incurred as surety for her son, and several creditors brought suit to set aside the conveyance of January 27, 1922, on the ground that it was without consideration and was also executed with the fraudulent intent to cheat, hinder and delay creditors. The several suits were consolidated and the relief prayed for was granted.

Appellants insist that there was a valuable consideration for the conveyance in question, inasmuch as it was made to carry out the written contract of 1916, and to carry into effect the conveyance of 1921, and the grantee also assumed certain mortgage indebtedness on the property. It must not be overlooked that there is a wide difference between a consideration that is good as between parties and a consideration that is sufficient to sustain a deed as against creditors. As against creditors one is never an innocent purchaser for value unless he parts with something of value. Not only was there no consideration for the contract of 1916, but neither that contract nor the deed of 1921 was ever put to record, and therefore neither was good as against creditors. Section 496, Kentucky Statutes. Excluding that contract, the only remaining consideration for either the conveyance of 1921 or the conveyance of 1922 was the agreement of the grantee to discharge certain indebtedness on the property. As the property was worth much more than the lien indebtedness, and none of the lien indebtedness was ever discharged, it is clear that the conveyances were wholly voluntary, and therefore void as against creditors. As Mrs. Whitesides was not an innocent purchaser for value, it is altogether immaterial whether she knew of the fraudulent intent of the grantor or not.

Appellants were not prejudiced by the alleged premature submission of the case. The suits were filed in March, 1922, and before the following June term many amendments were filed. The cases were consolidated

and ordered heard together. Depositions were taken in the consolidated cases on September 18, 1922, and the cases were ready for trial at the October term. At this term there were filed a few additional pleadings, but they did not affect or change the issues in any substantial way, and it is not contended that appellants were deprived of an opportunity to take any evidence that was material to the case.

In their amended answers appellants averred that Mrs. Briggs was a mere surety on the notes sued on; that bankruptcy proceedings were then pending against Muir Briggs, the principal, in which proceedings the various plaintiffs had filed the same claims set up in the pending actions, and this was pleaded in abatement of the actions. To this plea demurrers were sustained. It is insisted that this was error because the creditors should have exhausted their remedies against Muir Briggs, the principal, before proceeding against his surety. There is no merit in this contention. Mrs. Briggs, the surety, was primarily liable on the notes, and the creditors had a right to proceed against her and her son jointly or severally as they saw fit. If it were the rule that the mere filing of their claims in bankruptcy proceedings against the principal suspended their right to proceed against the surety until the bankruptcy proceedings were ended, the sureties would often escape liability altogether, and the law does not visit such a hardship upon the exercise of a legal right.

Another contention is that Wilson & Muir, a corporation, was not a party to the consolidated action, and that the judgment in its favor was erroneous. It does appear that Wilson & Muir had obtained a judgment against Mrs. Briggs and execution had issued and been levied on the land. Thereupon a petition was filed asking to be made a party to the consolidated action. Though there was no formal order to that effect, Wilson & Muir was recognized by the parties and treated by the court as a party to the action, and it would be trifling with justice to reverse the case because no formal order to that effect had been made.

The other errors relied on were all harmless, and not such as to authorize a reversal of the judgment.

2. (1) Appellants first excepted to the report of sale on the ground that the sale was not advertised in the names of the parties to all the separate suits, but only in the names of the parties to one of the actions. It ap-

pears that there were six different suits against Muir Briggs, Caroline T. Briggs and Obie Whitesides involving the fraudulent transfer of the farm owned by Mrs. Caroline T. Briggs to her daughter, Obie Whitesides, and that these suits were all consolidated and practiced as one case. The judgment in the consolidated cases ordered the conveyance cancelled and the farm sold. After the cases were consolidated it was proper to carry them on the record as one case and to advertise the sale in the names of the parties to that case, and we are unable to see how the advertisement of sale in the names of the parties to that case, and not in the names of all the parties to the consolidated case, could have affected the sale in any way, or have operated to the prejudice of appellants.

(2) The next ground of exception is that the advertisement did not show whose land was being sold, which had the effect of confusing prospective purchasers. There is no basis for this conclusion. In the notice of sale each of the two tracts ordered to be sold was accurately described by metes and bounds and courses and distances, and the number of acres in each was specifically set forth. That being true, there was nothing in the notice of sale calculated to mislead or to deceive an intending purchaser. On the contrary it was sufficient to apprise every one of the precise property that was being sold.

(3) Another exception is based on the claim that the notices of sale were not posted as required by the judgment or statute. On this question the evidence was conflicting, and we are not prepared to say that the trial judge erred in holding that the notices were properly posted.

(4) The fourth exception is that the notice of sale did not show the amount of money for which the lands were to be sold, or the amount of money to be raised or produced by the sale. It appears that the various debts for which the property was to be sold were specifically set forth, and that they aggregated the sum of $14,091.86, but through a typographical error, the total was given as $1,491.86. As several of the items exceeded the aggregate stated, the mistake in the total was clearly apparent, and not calculated to deceive anyone. Nor did the failure to state the amount of the costs invalidate the sale, as this was but a small item compared with the whole, and it was practically impossible at that time to fix the precise amount.

(5)   The fifth ground of exception is that Mr. S. W Seay, one of the appraisers of the property, stated to the commissioner when requested to make the appraisement, that he expected to bid on the property, and that, therefore, he was not "disinterested," as required by the statute.   It does not appear that the appraisement was unfair, or was influenced in the least by the purpose of Mr. Seay, who is a man of high standing, to bid on the property, and we are convinced that the chancellor ruled correctly in not setting aside the sale on the ground complained of.   Jones v. Deposit & People's Bank, 180 Ky. 395, 202 S. W. 907.

(6)   The next exception is that the commissioner refused to accept Muir Briggs' bid unless he had his surety there ready to execute the bond.   Muir Briggs claims that he told the commissioner that his uncle would go on his bond, and would be there at three o'clock, but this is denied by the commissioner.   Ordinarily, of course, the commissioner should accept the best bid and give the bidder reasonable time in which to execute a good bond, but that is not the invariable rule.   Much depends on the bidder himself, and if his financial and moral standing are such as to make it highly improbable that anyone will go on his bond, the commissioner is not required to hazard the rights of others by giving the bidder time to look up a bondsman.   Here the bidder, Muir Briggs, was not only known to be insolvent, but his moral standing was such that no reliance could be placed on his mere assurance that he would be able to give a good bond.   In view of these circumstances, we are not prepared to say that the commissioner's duty required him to accept a bid which he had no reason to believe would be perfected by the execution of a proper bond.   Hughes v. Swope, 88 Ky. 254, 1 S. W. 394.

(7)   The last exception is based on inadequacy of price.   With the exception of one witness who valued the land at $120.00 an acre, the other witnesses fixed its value at from $80.00 to $100.00 an acre.   The land brought about $97.00 an acre.   Clearly, the inadequacy of price, whether considered alone or in connection with the other irregularities relied on, was not such as to require that the sale be set aside.

The judgment in each case is affirmed.