# Kentucky Utilities Co. et al. v. Steenman et al.

May 28, 1940.

Churchill Humphrey, Judge.

318

Gordon, Laurent, Ogden & Galphin and Frank A. Ropke for appellants.

Richard P. Dietzman, Henry M. Johnson, Lawrence S. Leopold, Carroll, McElwain & Ballantine, Trabue, Doolan, Helm & Stites and John Marshall, Jr., for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

At the instance of stockholders, a receiver was appointed by the Jefferson Circuit Court for six allied corporations, of which the Kentucky Electric Development Company was the chief one, in order to prevent waste and conserve the property. This was on July 6, 1932. It had also been prayed in the petition that the court ascertain the assets and liabilities of the company to each other and to outsiders. But no other relief was asked. The judgment was affirmed. Oscar C. Wright Company v. Steenman, 254 Ky. 381, 71 S. W. (2d) 991.

The receiver continued the operation of the Kentucky Electric Development Company, it being the only one of the group owning any physical property. Though it is not in the record it appears by reference that the receiver filed a report of claims on July 12, 1934. No steps were taken in the case until December 13, 1939. Agreed orders signed by all the parties were then entered setting out the amounts of their respective claims against the Development Company, and dividing them into two classes, one of which should be paid in full and the other only on condition that the property "bring at a decretal sale" not less than $175,000, the right being reserved as to this second class of creditors to submit the claims to the court for adjudication. These agreed orders consented to a sale. On January 23, 1940, the court, "pursuant to the agreed order entered herein in December, 1939," ordered and adjudged that all the properties of the company be sold as a whole "at public sale to that bidder whose bid the court shall determine to be the highest and best bid." It was directed that the sale be by the commissioner of the court, after due

advertisement, at the Jefferson County Court House. It was provided that no bids should be received or considered of less than $175,000; that the purchaser should make a "cash deposit of $500.00 and the balance of the purchase price shall be paid without interest on or before six months from the date of the confirmation of said sale"; that if the balance should not be so paid, then the sale should be null and void and the $500 deposit forfeited for the benefit of the company; and that conveyances should be made to the purchaser upon receipt by the court of the payment of the balance of the purchase price.

On February 8th, the commissioner reported an offer of the sale on February 5th, and that bids were received from J. McCauley Smith of $176,500, and from O. C. Wright, agent, $177,000, and that each bidder had made the stipulated cash deposit. It was further reported that Smith had filed a "declaration of agency and assignment of the bid" to the Kentucky Utilities Company. On its own motion the court referred to the Honorable Lafon Allen, as a special master, the question of which of the two bids was the highest and best bid. The special master heard much evidence on the issue which arose between Wright and the Kentucky Utilities Company, assignee and principal of Smith. He filed an analytical report and logical opinion in respect both of facts and law, with the finding that the Kentucky Utilities Company was the highest and best bidder and recommended its acceptance. The Kentucky Utilities Company filed exceptions to the report of sale, questioning the jurisdiction of the Jefferson Circuit Court to order the sale, and upon other grounds which have been conceded to be non-substantial. Wright filed exceptions to the report of the special master in which he set forth certain criticisms and objections. Fred C. Bruner, a creditor, also excepted to the master's report "because same is flagrantly against the evidence." Likewise, the receiver of the Utilities Development Company of Indiana as a creditor. It seems to be an allied corporation of the Development Company. The court heard evidence on these exceptions and overruled them, adopting and confirming Judge Allen's report and recommendations. The court adjudged the bid of the Kentucky Utilities Company to be the highest and best bid, and that the properties of the company "heretofore or-

dered to be sold are now hereby sold to the said Kentucky Utilities Company.''

It should be stated that by order of court, Leonard D. Steenman (who instituted the litigation as a stockholder) was authorized as a creditor to prosecute and defend for all other creditors who should not expressly dissent from such representation, excluding those creditors who had filed exceptions to the special master's report.

The Kentucky Utilities Company and Bruner prosecute a joint appeal from the judgment against Steenman, Wright, the Kentucky Electric Development Company and its receiver, and two allied corporations, as appellees. Wright has been granted a cross-appeal.

The Kentucky Utilities Company, though it is here as an appellant, desires that the judgment be affirmed, its purpose in prosecuting the appeal being to have disposed of the doubt as to the jurisdiction of the Jefferson Circuit Court to order the sale and convey good title. Though the judgment is apparently favorable to the appellant and, therefore, within the logical rule that a party cannot appeal from a judgment in his favor, the company lost on its exceptions to the report of sale and is in position to prosecute the appeal. Its point is that though the Development Company had its principle office in Jefferson County and all parties interested in the litigation were before that court and have consented to the judgment of sale, yet none of the company's real estate nor any of its property, except some office furniture, is situated in Jefferson County. The real estate is located in four or five counties other than Jefferson. The appellant, Bruner, expressing satisfaction that he would be paid his claim regardless of the result of the appeal, makes the point that the judgment of sale only gave the bidder an option to purchase the properties by depositing $500, and that neither of the bidders could be compelled to complete the purchase within the six months provided. He also contends that Wright is entitled to be considered and accepted as the highest and best bidder. All of the appellees, except Wright, express a desire that the judgment be affirmed. Wright does not raise the question of jurisdiction, but insists that under the evidence as to what transpired in the offer of sale by the commissioner, he was the sole and

only bidder and that in any event he was the highest and best bidder and it should be so adjudged.

The record is unusual. There is no pleading seeking a sale of the corporation's properties for the satisfaction of liens, coupled with the allegations of insolvency and waste. The suit is strictly within the terms of Sections 298 and 302, Civil Code of Practice, neither of which, nor any other Code provision to which our attention has been called, authorizes a sale of the property and distribution of proceeds of an ordinary commercial corporation. Receivership is generally ancillary to an action seeking some other ultimate relief, such as the enforcement of a lien, but our special Code provision (Section 298 et seq.) makes a difference in our practice from general equity procedure in which the appointment of a receiver is but an aid or auxiliary. 53 C. J. 22; Fleming v. Virginia Mining Company, 196 Ky. 38, 244 S. W. 295. Under the peculiar facts, the absence of pleading, however, is not fatal to the judgment of sale. That judgment was agreed to by the parties to the suit. They constituted all of the necessary and proper parties and all were competent to agree. It is a general and sensible rule that a judgment by consent or agreement operates as a waiver of all defects or irregularities in the pleading or other proceedings, except such as involve the jurisdiction of the court. 34 C. J. 134; King v. Ohio Valley Railroad Company, 10 S. W. 631, 10 Ky. Law Rep. 748; Lodge v. Williams, 195 Ky. 773, 243 S. W. 1011; Boone v. Ohio Valley Fire & Marine Insurance Company, 246 Ky. 489, 55 S. W. (2d) 374. Such an agreed order is not strictly the court's judgment, for the issues have not been settled by the court. The agreement becomes a judgment in the sense that it is sanctioned by the court and allowed to go on the record as such. Karnes v. Black, 185 Ky. 410, 215 S. W. (2d) 191. Nevertheless, it has the same force and effect as any other judgment. Lodge v. Williams, supra.

The foregoing considerations are important for the Jefferson Circuit Court sold real estate which was involved only in a receivership proceeding to prevent waste. No part of that real estate was in that county. To use a homely expression, we have a case where ultimately the "tail wagged the dog."

At first impression, Section 65 of the Civil Code of

Practice would seem to have specifically denied the court power to sell the property. Among other classes of litigation it provides that an action to settle the estate of a corporation in the hands of a receiver must be brought in the county in which the receiver qualified, and for the purpose of a settlement of such an estate the receiver shall have the same power to sue as had the owner of any action. However, it is added that an action brought by a receiver for the sale of property under lien, or for "charges upon, or injury to real estate or an estate or interest therein, must be brought in the county in which such real estate is situated, and not elsewhere." The inapt and confusing language of this section of the statute is clarified by reference to the Act of 1898 which added the foregoing and other provisions to the existing section. The act carried an emergency clause explaining that actions had been brought in the Jefferson Circuit Court by receivers of a number of building and loan associations to enforce mortgages which they held upon property in other counties in which the property was located, respectively. But this is not an action by a receiver to enforce liens; hence, Section 65 of the Code is not applicable. The court's authority to sanction the agreement to sell and thereby make it a judgment of the court, with the concomitant right of appeal, must rest upon Section 62, Civil Code of Practice, which declares that actions for the sale of real estate under a lien or other encumbrance or charge, with certain inapplicable exceptions, "must be brought in the county in which the subject of the action, or some part thereof, is situated." If this covers jurisdiction and not venue, and if the sale of the property be not regarded as the subject of the action or a part thereof, then the sale under the decree was void. To avoid confusion in our opinions in respect to jurisdiction and venue in cases involving injury to or the sale of real property under Section 62 of the Code, it is always necessary that consideration be given the particular nature of each action, as pointed out in Shadoin v. Sellars, 223 Ky. 751, 4 S. W. (2d) 717. If the subject matter of the action or any part thereof is localized so as to give the court jurisdiction over it, and the sale of land is an incident of complete adjudication, the power of the court to order a sale exists, otherwise it does not. We held under the particular facts in Shadoin v. Sellars, supra, that the Henderson Circuit Court did

not have jurisdiction to sell real estate in Webster County in order to settle the affairs of a corporation whose charter had expired, and that the parties could not confer jurisdiction by consent. But in Fourseam Block Collieries Company v. John P. Gorman Coal Company, 259 Ky. 132, 82 S. W. (2d) 223, we held that the Fayette Circuit Court had authority to sell real estate in Perry County in order to satisfy a lien where the court had appointed a receiver and the parties had voluntarily submitted to jurisdiction without objecting to the venue. The case at bar is ruled by that decision. Here there was no question of authority of the court to appoint the receiver. It was a suit where that was the relief sought and that was clearly the subject matter of the action. The sale of the land was a part thereof in order that there might be a complete adjudication. If it were the converse, that is, the object had been to satisfy a lien with the receivership but an incident or auxiliary proceeding, we would have another case. We are, therefore, of opinion that the Jefferson Circuit Court was authorized to enter the agreed judgment and that it was and is binding upon the parties.

We do not construe the judgment as authorizing the sale of an option only, nor the report of the commissioner as disclosing that only an option was sold. The judgment though not in the ordinary form of a judicial decree directing the sale of property was a judgment of sale to be made by the court to the highest and best bidder. The $500 deposit was not to be paid for an option for the privilege of buying the property six months later, but was a part of the purchase price payable in cash, with the remainder payable six months later. Judicial sales made upon terms have never been regarded as mere options. We are not concerned with the validity or effect of the provision for forfeiture of the cash payment if there had been a default in complying with the terms.

On the cross appeal, Wright insists that the sale was unenforceable under the statute of frauds because at the time no memorandum was made or signed by the commissioner as an auctioneer. Kentucky Statutes, Section 470. Waiving the question whether the sale was by the commissioner subject to confirmation, or was by the judge as an original and direct act, Wright is confronted with the rule that it is not he who was the party to be

charged, and also the ruling that a sale of land by a commissioner of the court under decree is not within the terms of the statute of frauds and that no memorandum need be made of the sale at the time it is cried. Watson's Adm'r v. Violett, 2 Duv. 332, 63 Ky. 332. Proceedings are founded on the written report of the commissioner, who has power to execute the necessary writings and bind all the parties in interest. Linn Boyd Tobacco Warehouse Company v. Terrill, 13 Bush, 463, 76 Ky. 463.

When Wright raised his bid to $177,000, which was $500 over that made by Smith, the latter did nothing more at the time. He did not tender the cash deposit although prepared to do so by a certified check. Wright, however, deposited $500 in cash immediately. Two days later, Smith deposited $500 with the commissioner, together with papers evidencing his claim or the claim of his principal, the Kentucky Utilities Company, that it was the highest and best bidder. It was customary for the commissioner when making a sale on Monday to file his report on Friday, but in this case, by a special order, he was required to file his report on Thursday. We have stated that report. These facts form the basis of the contention that Wright was the sole bidder, as he alone complied with the terms of the judgment. It is a salutary rule that where exceptions have been filed to a judicial sale, nothing which occurred subsequent to the sale may be taken into consideration by the court, which is required to decide the issue on the status existing when the sale was made. Cook's Adm'r v. Franklin Fire Insurance Company, 224 Ky. 360, 6 S. W. (2d) 477. But can it be well said that the delay on the part of the Kentucky Utilities Company in making the deposit deprived it of the right to claim that it had bid at the sale? Again giving to the procedure the status or character of a strictly and ordinary judicial sale, there is applicable the rule that the commissioner of the court may give a bidder a reasonable time to comply with the terms of the sale, such as to execute the sale bonds. Briggs v. Wilson & Muir, 204 Ky. 135, 263 S. W. 740. It seems to us that the deposit by the Kentucky Utilities Company under the circumstances was in a reasonable time and that it was within the discretion of the commissioner and of the court to regard it as having been a compliance with the terms of the sale.

Wright's bid was the highest. But the sale was to be made to the highest and best bidder. The court had thereby retained the right to exercise a discretion in his acceptance or rejection of the bids. That had been agreed to by Wright and all the other parties to the suit. It was a wise provision for property of considerable value was involved and, more than that, several public utilities were being sold, in the sale and operation of which the public had an interest of a character. The operation of those properties for eight years had been by the court through its receiver. Wright was the master mind in creating the system, but at the same time, as the former opinion discloses, he had involved it in debts and had built a financial house of cards. The fall of it wiped out the investment of many stockholders. Undoubtedly, however, he believed that if given another chance he could make the system a success and, therefore, was personally much concerned in retaining it. But Wright showed that he was not able to comply with the terms of the sale, that is, to produce the balance of $176,500, within six months and could not possibly do so unless he could resell the properties, as he proposed to do, to the several cities and towns where they were located, and as to that part of the system which served rural communities, establish other municipal districts or corporations to which he could sell. Wright had interested a bonding company who was ready and anxious to assist in negotiating those sales by encouraging the issuance of bonds which it would buy; but that was all. Judge Allen, as a special master, and Judge Humphrey, as a chancellor, had all the facts as to the ability of the two bidders to comply with the terms of the sale. We have considered those same facts and have no hesitancy in concurring in their conclusions that Wright's bid was so highly speculative that he could not be regarded as the "best" bidder when compared with the Kentucky Utilities Company, which showed that it was ready to pay the entire consideration in cash without delay.

The judgment is affirmed on both the original and cross-appeal.

Judge Fulton not sitting.