# McGlone et al. v. Smith et al.

Feb. 5, 1943.

Wm. A. Hamm and C. R. Luker for appellant.

Wm. Lewis & Son and R. B. Johnson for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This suit was filed by G. L. Michael against H. H. Pope, Sr., and others alleging, among other things, that he and Pope had formed a partnership for the acquisition and operation of a coal mine; that he had advanced cash and furnished machinery of a total value of $10,298; and that the individual defendants had organized a corporation and turned over the property to it, ignoring his rights and leaving him out of consideration. The plaintiff prayed for certain specific relief and an accounting and settlement of the partnership. The defendants denied there was any partnership and almost everything else alleged in the petition. In the course of time a number of intervening petitions were filed by creditors, many asserting laborers' liens. E. Q. McGlone came in and pleaded an indebtedness owing him by Michael and a prior mortgage on some of the machinery. Upon a voluminous record, the court adjudged the rights of the several parties. Michael and McGlone prosecute an appeal against all the others. We do not reach some of the grounds for reversal of the judgment and they need not be mentioned.

McGlone's appeal is independent of Michael's. His mortgage on a cutting machine and motor locomotive was adjudged to be inferior to the laborers' liens and Cam M. Smith's mortgage. The judgment was rested on the fact that McGlone had introduced no evidence to prove priority of his mortgage; also because it appeared the mortgage covered other property which the court assumed to be worth the balance of his debt, the court ruling that he should exhaust that security before the

two machines involved in this case. For aught that appears in the record that property may be nonexistent. The assumption seems unauthorized. McGlone pleaded that on October 12, 1938, he had made a conditional sale to Michael of certain mining equipment, in part payment of which Michael had executed and delivered a mortgage on five described machines, among which were the cutting machine and motor locomotive. He alleged "that on the 13th day of December, 1938, the said mortgage was lodged for record in the office of the clerk of the Perry County Court and was duly recorded in Chattel Mortgage Book 5, page 414, and is in File Number 6410 in said clerk's office; that at the time said mortgage was executed the property described therein was situated in Perry County, Kentucky." An attested copy of the mortgage with the Clerk's certificate was filed and made a part of the pleading. However, the certificate does not show the date the instrument was lodged for record as required by KRS 382.300. McGlone alleged that thereafter, without his consent, Michael had moved the machinery to Laurel County and delivered it to the Pope Coal Company, or persons interested in that company, at the mine referred to in the record. Neither Michael nor any of the original defendants filed an answer to McGlone's intervening petition. A personal judgment was rendered against Michael for the debt. The claimants of other liens, however, stated in their answer that they did "not have any knowledge or sufficient knowledge or information upon which to base or form a belief as to whether the plaintiff, Michael, was indebted to" McGlone. They made reference in the same form to the execution and existence of the mortgage, adding "or was ever recorded except as is claimed by the said McGlone, but each of them deny that the said intervenor, E. Q. McGlone, now has a first or prior or superior lien upon any of the personal property mentioned in the original petition in this case to secure the payment to him of his alleged claim of indebtedness to him by the plaintiff, G. L. Michael, or that his said claim is superior or prior to either of their claims against the property of the Pope Coal Company as set out and described in the petition herein."

Overlooking the fact that the pleading of priority is no more than a conclusion, it is apparent there was no denial of the mortgage or that it was recorded on De-

cember 13, 1938, in the county where the property was located. It was conceded. This made it unnecessary for McGlone to introduce proof. We need not, therefore, consider the argument that no evidence was necessary to sustain his claim of priority because of the provisions of Sections 120, 128 and 527 of the Civil Code of Practice relating to exhibits filed with a pleading becoming a part of the record as evidence where not controverted as therein prescribed.

None of the intervening petitions asserting laborers' liens were filed earlier than October 2, 1939. Others were filed October 20th and November 10th. Making their allegations more specific and definite, the laborers stated the work was done in April and May, 1939. The mine ceased operating May 26, 1939. These liens were acquired by virtue of sec. 2487, Ky. Stats. (now KRS 376.150) which provides that when the property or effects of any mine or other specified industry are to be distributed among creditors, its employees shall have a lien thereon. Such liens are superior to a subsequent mortgage on the property and if they are for wages due six months before distribution of the assets they are superior to any previous mortgage. Section 2488, Ky. Stats. (now KRS 376.160). If the operation of the mine or industry shall be suspended, it is provided in Section 2490, Ky. Stats. (KRS 376.180) that the liens attach as provided in Section 2487, Ky. Stats. (KRS 376.150). The decisive section here is Section 2491 (KRS 376.190) declaring that suit must be filed to enforce such statutory lien within sixty days from the date the ''business shall be stopped or suspended'' or other specified action, and that the claims for which liens are asserted must be filed within that time with the person authorized to receive or report claims. While some of these mine employees had obtained judgments in a magistrate's court, which they filed in this case, no lien had been adjudged them; and, as above shown, none of the liens had been claimed or asserted until more than four months had elapsed from the suspension of the operation of the mine. We are of the opinion, therefore, that they acquired no lien superior to McGlone's mortgage. Gugenheim v. Watkins, 167 Ky. 639, 181 S. W. 357; Producers Coal Company v. Barnaby, 210 Ky. 244, 275 S. W. 625; Freeman v. Craft, 220 Ky. 15, 294 S. W. 822. We think the judgment subordinating McGlone's mortgage lien to the

laborers' lien was erroneous for both reasons; that it was a duly recorded previous mortgage and the laborers' lien was not asserted anywhere or in any manner within sixty days.

The Pope Coal Company made a mortgage to Cam M. Smith upon all its equipment, including that covered by McGlone's mortgage, on February 26, 1939, for $700, of which $550 balance remained unpaid. The court found that some of the claims for labor were for work done before the company was incorporated and some afterward, and held that Smith's mortgage was of equal dignity with the laborers' liens and superior to McGlone's mortgage. No question is raised on this appeal between these parties as to the ruling that Smith's mortgage stood on a par with the laborers' liens. There may be other reasons for thinking the judgment that Smith's mortgage superior to McGlone's is erroneous, but it is sufficient to point out that since the pleadings admitted that McGlone's mortgage was recorded in the proper office on December 13, 1938, it follows as of course that Smith took his mortgage subject to that prior one.

Michael submits several reasons why the judgment adversely affecting him is erroneous. One of them is that he was entitled to be adjudged priority over all liens to the extent of the note for $500 that he and Pope early in the venture had executed to a bank and secured by mortgage, which he, Michael, had paid off. He claims subrogation. We think the court was correct in holding that as a partner—which he continued to insist he was at all times—he was not entitled to any distributable share in the partnership property until all its creditors had been satisfied. Hagan v. Hurst, 228 Ky. 645, 15 S. W. (2d) 446.

Pending disposition of the case it was agreed that the property involved should be sold, and an order was entered accordingly, the sale to be made by a special commissioner. A sale was had on March 11, 1940, to the plaintiff, Michael, for $1,000. He took possession and spent $2,417 in pumping the mine and in repairing and restoring the equipment. Exceptions to the report of sale were sustained because of defective advertisement and inadequacy of price. At the second sale held on May 13th, Michael became the purchaser for $1,300; but it was set aside because of certain statements the plaintiff had had publicly made concerning his claims, which

chilled the sale. A third sale was had on July 13th. The special commissioner reported that the property had been "knocked off" to the defendant, H. H. Pope, for $1,900, the highest bid, but that Pope had advised the commissioner that he could not make the necessary bond until Monday, the sale being conducted on Saturday. The commissioner thereupon opened up the sale and Michael became the highest bidder at $1,450. He promptly executed the purchase money bond and was reported as the purchaser. The court heard testimony on exceptions filed by the defendants and intervenors and recited in his order that he had personal knowledge of the fact that on Monday, July 15th, when the commissioner had offered to file his report, to which objection was then made, Pope had appeared in open court and offered to execute bond for the amount of his bid, $1,900. The order, entered on the 17th, also recited that Pope had then present a certified check for $1,900, payable to the commissioner, and it was adjudged that the exceptions to the report of sale to Michael should be sustained, his bond cancelled and that Pope's bid and check should be accepted. Michael insists on his appeal that none of the sales should have been vacated. It seems enough to say we conclude the first two were properly set aside. The question is whether the order setting aside the last sale to Michael and substituting the bid of Pope was proper.

The order of sale was in the conventional form in directing the commissioner to make it to "the highest and best bidder." The commissioner is not at liberty to disregard the terms of such an order. He owes the duty to the court, the parties and prospective purchasers to exercise his best judgment and reasonable discretion, using due diligence and acting in good faith. This embraces the discretion as to what time shall be given the highest bidder to execute the bond required. A guide is laid down in Hughes v. Swope, 88 Ky. 254, 1 S. W. 394, 395, in this language:

"While it is the duty of the commissioner, in such cases, ordinarily, not to require purchasers to be ready with their bonds and sureties to the minute, but to allow a reasonable time to prepare the bond, and get the sureties together, for the purpose of signing it, yet he must, of necessity, be the judge of the length of time he will give. The time he might give one man would be reasonable and justifiable,

but the same time given another man might not be reasonable and justifiable. In the one case, where the party was known to be solvent, of good credit, and prompt and reliable, the commissioner would be justified to wait on him to get together his sureties; or, on the other hand, as in this case, where the party was known to be insolvent, and no satisfactory assurance given the commissioner that he could make a good bond, then he should not hazard the rights of others by giving time to look up bondsmen, etc.''

When it satisfactorily appears to the commissioner that the highest bidder is not the best bidder and cannot reasonably make the bond within the time he determines it shall be done, it is within his power to re-sell the property then and there. Wilson v. Thorn, 13 S. W. 365, 11 Ky. Law Rep. 945; Swafford v. Howard, 50 S. W. 43, 20 Ky. Law Rep. 1793.

On the trial of the exceptions to the report of sale to Michael, Pope testified he lived in Harlan County, about eighty miles from London where the sale was conducted, and had told the commissioner he would return and execute the bond on the following Monday; that he had arranged with Charles Guthrie to sign it as surety, but later qualified that statement by saying he had merely talked with Guthrie and his brother, Clyde, and that they knew what he was doing. He testified he had returned to Harlan and talked with Guthrie. It may be inferred from another part of his testimony that he had meanwhile sold the property, or whatever right he had to it, to Guthrie, who had put up the $1,900 tendered in court. Clyde Guthrie testified Pope had not made any previous arrangement with him to sign his bond as surety. The special commissioner was sheriff of Laurel County. He testified to his conversation with Pope when he had "knocked off" the property to him as to not being willing to wait until Monday to make the bond; that "I didn't think he would come back. He was insolvent so far as I knew. We attached him thirty or forty times, and I understand he has several cold checks out." The authority and propriety of the commissioner in refusing to accept Pope's bid as the "highest and best" upon his promise to have a surety and make bond on the following Monday is supported by the evidence and the precedents. Hughes v. Swope, supra; Wilson v. Thorn, supra; Carter v. Carter, 66 S. W. 624, 23 Ky. Law Rep. 1963;

138

Briggs v. Wilson & Muir, 204 Ky. 135, 263 S. W. 740; Butler v. Jones, 225 Ky. 338, 8 S. W. (2d) 378; compare Kentucky Utilities Co. v. Steenman, 283 Ky. 317, 141 S. W. (2d) 265. Under these circumstances we think the court should have overruled the exceptions and confirmed the sale to Michael.

It seems that this disposition of the case will take care of Michael's other contentions.

The judgment is reversed with directions to adjudge McGlone's mortgage superior to other liens and to confirm the last sale to Michael.