## Barnell v. Jacobs et al.

March 28, 1947.

W. Scott Miller, Judge.

Raymond C. Arny and Carl J. Richard for appellant.

Lawrence Grauman for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Eva Barnell filed this action against Simeon S. Jacobs and his wife, Stella, to compel them to convey to her a house and lot known as 4519 Jewel Avenue in Louisville. The petition averred that Jacobs as plaintiff's attorney had taken title in his and his wife's name under an agreement to purchase the property for his client, Miss Barnell, and had refused to convey it to her. The court sustained a general demurrer to the petition and upon Miss Barnell's declining to plead further, her petition was dismissed and she appeals.

It is necessary to give a brief resume of certain facts involved in a foreclosure proceedings concerning this same property in order that a clear understanding may be had of this controversy. The Home Owners Loan Corporation had instituted foreclosure proceedings against Miss Barnell in action No. 277414 in the Jefferson Circuit Court in which a judgment was entered directing the sale of her home. The petition in the instant action expressly makes that foreclosure suit a part of this one and that entire proceeding is copied as a part of the record in the suit now before us.

The report of sale made on July 26, 1943, in action No. 277414 shows that Mrs. Fannie Barnell, the mother of plaintiff, was the purchaser for $6,600. She was unable to execute the sale bond and the sale was set aside. The order of re-sale directed that neither she nor any one for her would be accepted as a bidder unless the full purchase price be paid in cash, and it further direct-

ed that the cash deposit required of the successful bidder be raised from $100 to $500.

The report of the second sale filed March 27, 1944, shows that Eva became the purchaser for $7,010, but she could not make bond and that sale was set aside. The order directing a second re-sale recited that no bid be accepted from Eva or her mother, or from any one acting for or on behalf of either of them, unless the full purchase price be paid in cash.

On the third sale held on July 10, 1944, Jacobs was the highest bidder at $6,300 and deposited the $500 cash required and executed bond for the balance. When he attempted to obtain possession of his purchase, he encountered a considerable barrier in the two Barnell women, the daughter being highly nervous and the mother old and sick.

When the sale was set aside at which the mother became the purchaser, a rule was issued against her. But the record shows that the deputy sheriff who attempted to serve it could not gain admittance to the house, although he heard persons moving about in it. The same thing happened when a rule was issued against the daughter, Eva, when the sale at which she became the purchaser was set aside and a rule was issued against her. When Jacobs attempted to have notice served on these women that he would move the court to grant him a writ of possession, the deputy sheriff's return on the notice stated that he could not gain admittance to the house, although he heard people inside. That notice was finally served by attaching a copy thereof to the front door of the house wherein these two women resided, which was the property Jacobs had bought. Upon a hearing of this motion, the court granted a writ of possession on June 27, 1946, which was returnable on July 25, 1946.

The return of the deputy sheriff shows that he executed this writ of possession on July 22d, with the assistance of the police department, the fire department, a taxicab company, two other deputy sheriffs, a Miss Phillips and another civilian or so, by firmly but gently placing Mrs. Barnell in an ambulance and sending her to the General Hospital of the City of Louisville. When he placed the mother in the ambulance, the daughter rode

with her. While the two women were out of the house their furniture was set outside and covered with a tarpaulin by the fire department. The sheriff received information that Eva had returned to the house. But she was not there when he investigated and he procured a chain and padlock and applied them to the front door, which appears to have been effective in keeping Eva from re-entering.

On July 8, 1946, Eva filed this petition in equity against Jacobs and wife wherein she averred that she had employed him as her attorney to protect her interest in action No. 277414 (the foreclosure suit in which the above-mentioned events transpired) and that he agreed to bid in the property for her upon the third sale; that pursuant to this employment and agreement she delivered $500 to Jacobs to be used by him in meeting the cash deposit the court required of the successful bidder; that she and Jacobs attended the sale and he bought the property for $6,300 and used her $500 to satisfy the cash deposit, but he refused to deed the property to her, and unless enjoined by the court Jacobs would dispossess her by obtaining a writ of possession in action No. 277414. As above stated, she made the entire record in action No. 277414 a part of the record in this case. Also, she attached interrogatories to her petition in this action wherein she asked Jacobs if she did not employ him and deliver $500 to him to meet the cash deposit required by the court when he bid in the property for her in his own name. Although he filed a general demurrer to the petition, Jacobs answered these interrogatories, denying that he was employed by Miss Barnell in action No. 277414 or that he agreed to bid in the property for her, or that she gave him $500, or any sum, to be used in making the cash deposit required by the court. We suppose he did this to protect his name and reputation from the charges contained in the petition.

Evidently, the chancellor sustained the general demurrer to the petition on the theory that the agreement set out in the petition in this action was invalid and unenforcible because made in direct conflict with the order of the court in action No. 277414 which contained this provision: "That no bid at said re-sale of said real estate shall be received by said commissioner from Eva

Barnell or Fannie Barnell, or anyone for either of them or on behalf of either of them unless the full purchase price is paid in cash at time of re-sale."

Since Eva and her mother both failed to execute sale bonds when each bid in the property on previous sales and had secreted themselves when rules were issued against them to show cause why they should not be required to execute the sale bonds, the chancellor properly ordered that neither of them, nor any one for either of them, should be allowed to bid at the third sale of this property. 31 Am. Jur. "Judicial Sales," sec. 255, p. 539. Also see Briggs v. Wilson & Muir, 204 Ky. 135, 263 S. W. 740; McGlone v. Smith, 293 Ky. 131, 168 S. W. 2d 566; Kentucky Utilities Co. v. Steenman, 283 Ky. 317, 141 S. W. 2d 265. It is elementary that a judicial sale must be made according to, and in compliance with, the terms of the judgment or order of sale. Noel v. Harper, 170 Ky. 657, 186 S. W. 503.

The plaintiff relies upon KRS 381.170 (which provides that a trust results where the purchaser wrongfully takes title to real estate without the consent of the one paying the consideration), and 7 C. J. S., Attorney and Client, sec. 126, p. 960 (that ordinarily it is a breach of duty for an attorney to acquire an interest adverse to his client without the latter's knowledge or consent), and many foreign cases to the effect that an attorney is forbidden to purchase an interest in the thing in controversy adverse to his client's interest.

While it is true this petition does contain averments that Jacobs acted in bad faith and adversely to his client's interest in purchasing this property, yet plaintiff is in no position to seek the aid of a court of equity in enforcing a contract the chancellor expressly had forbidden her to make. No principle of law is more firmly established than the one that courts will not enforce an illegal contract. The policy of the law is not to aid either party to an illegal contract but to leave the parties where it finds them. 17 C. J. S., Contracts, sec. 272, p. 656; Maxey v. Payton, 248 Ky. 758, 59 S. W. 2d 1005; Asher v. Asher, 278 Ky. 802, 129 S. W. 2d 552.

The judgment is affirmed.