**E'TOWN SHOPPING CENTER, INC., etc.,**
**Appellants,**

**v.**

**LEXINGTON FINANCE COMPANY, etc.,**
**Appellees.**

Court of Appeals of Kentucky.

Jan. 17, 1969.

Robert E. Hogan, Louisville, John Arnett, Elizabethtown, for appellants.

J. Montjoy Trimble, Cecil F. Dunn, Lexington, Harold K. Huddleston, Elizabethtown, for appellees.

PALMORE, Judge.

This is a mortgage foreclosure proceeding in which property owned by one of the appellants, E'town Shopping Center, Inc. (hereinafter E'town), was ordered sold to satisfy a $135,279.24 judgment in favor of Lexington Finance Company, one of the appellees. The master commissioner reported a sale to appellee Airport Bowling Lanes, Incorporated (hereinafter Airport), for $132,000 and a deficiency judgment was entered against appellants Robert L. Jenkens and Helen M. Jenkens, who had personally guaranteed payment of the mortgage note.

The note, executed on December 18, 1961, called for interest at the rate of 8% per annum. The trial court awarded interest at that rate until the date of judgment. The Jenkenses, having pleaded usury, claim this result is erroneous insofar as the recovery against them includes interest in excess of 6% per annum.

At the time the note and guaranty agreement were executed the maximum legal rate of interest applicable to the loan was 6%. KRS 360.010. The Jenkenses invoke the benefit of KRS 360.020, which invalidates contracts to the extent they are usurious. They contend that KRS 360.025, which denies the defense of usury to corporations (including E'town), does not apply to them.

It is the general rule "that a statute withdrawing the defense of usury from a corporation applies also to individual guarantors, sureties, and indorsers on corporate obligations, so that they, as well as the corporation, are precluded from interposing usury as a defense." Annotation, "Statute denying defense of usury to corporation," 63 A.L.R.2d 924, 950, citing numerous supporting authorities. See also 38 Am.Jur.2d 1056 (Guaranty, § 51); 50 Am.Jur. 1003 (Suretyship, § 151). The right of a surety or guarantor to rely on the defense of usury exists by reason of his privity with the principal obligor; hence if the defense is not available to the principal it cannot pass to the surety or guarantor. Cf. 55 Am.Jur. 410 (Usury, § 122); Stewart v. Bramhall, 74 N.Y. 85 (1878).

It is further argued, however, that guarantors are made the same as co-makers by virtue of § 3–416 of the Uniform Commercial Code (KRS 355.3–416), subsection (1) of which reads as follows: " 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." Conceding, as the explanatory note following this subsection of the UCC says, that the *liability* of a guarantor

is made the same as that of a co-maker, it does not follow that he is in fact a co-maker, and certainly he is not the borrower for whose protection the usury laws were designed. It appears to us that the basic purpose of UCC § 3–416(1) is to put one who is technically a "guarantor" in the same position as a surety with respect to enforceability of the obligation without first proceeding against the principal. The liability of a surety is of course commensurate with that of his principal, and if the defense of usury is not available to the principal it is not available to the surety. Pardee v. Fetter, 345 Mich. 548, 77 N.W.2d 124 (1956).

The main problem in the case arises from the manner in which the judicial sale of the mortgaged property was conducted. The judgment directed that the property be sold at public outcry to the highest and best bidder on credit of six, twelve and eighteen months in the form of bonds with good surety, subject to a privilege on the part of the purchaser to pay all or any part in cash. The judgment provided also for a $500 cash deposit, as follows:

" * * * The Purchaser or Purchasers shall be required to make a cash deposit of $500.00, either in cash or by certified check, immediately after said sale, and in default of said deposit, said Master Commissioner shall immediately resale [sic] said property upon the same terms and conditions as set out herein."

The master commissioner's report of sale recites the following circumstances:

"In competitive bidding the property was knocked off to the bidder, R. L. Jenkins [sic]. The successful bidder, the attorneys, and others adjourned to the Sheriff's office to execute bond. Mr. Jenkens declared he was bidding for the Sampson [sic] Construction Company and tendered a certified check for $500.00 but offering no surety on his bond; he asked for time during the day and that he would execute corporate surety. My attention was called to the Judgment that in default of the said compliant [sic]

of the terms therein to immediately resell the property.

"Unfortunately this bond could not be executed immediately and the auctioneer and myself appeared there at the Courthouse steps and continued this sale and re-sold the same, starting with Tract No. 1, No. 2 and No. 3 and then as a whole and it was sold for $132,000.00 to the Airport Bowling Lanes, Inc.," etc.

E'town, the Jenkenses, and Samson Construction Company, Incorporated (hereinafter Samson), filed exceptions to the report of sale in which they alleged among other things that the amount of Samson's bid which had been first accepted and later rejected was $147,100; that Samson represented to the master commissioner that it would execute the required purchase bonds with good surety before expiration of customary business hours on the day of the sale; and that although the master commissioner had assured the parties before the sale that a reasonable time would be allowed the successful bidder in which to execute the bonds and secure them with adequate surety, he nevertheless declared a "no-sale" and conducted a purported resale in which Airport, which had theretofore bid the property up to $147,000, became the successful bidder for $132,000. The exceptions asked that the sale to Airport be set aside and the property awarded to Samson at its bid price of $147,100 in accordance with the terms of the judgment. E'town, the Jenkenses, and Samson appeal from an order overruling their exceptions to the report of sale.

■ The order overruling exceptions and confirming the report of sale recites that the court heard arguments of counsel and that "all parties * * * had the opportunity to present their case," but there is no indication in the record that evidence was presented or that any factual determinations were made with regard to the allegations contained in the exceptions. Those allegations must therefore be disregarded, because exceptions to a commissioner's report are considered traversed as a matter of law and must be proved. Kelley's Heirs v. Burnam, 305 Ky. 544, 204 S.W.2d 965, 174 A.L.R. 534, 538 (1947); Hume v. Chenault, 305 Ky. 68, 202 S.W.2d 1018, 1020 (1947); Graves' Committee v. Lyons, 166 Ky. 446, 179 S.W. 413, 415 (1915). Nevertheless, the commissioner's report itself shows that Jenkens, purporting to act for Samson, offered the highest bid and tendered the required deposit, that the property was "knocked off" to him, that he "asked for time during the day" and indicated *"that he would execute corporate surety"* (emphasis ours), but that the master commissioner, construing the judgment as directing a continuation of the sale unless the bonds were executed immediately, at once re-offered the property and sold it to Airport for $132,000. From the face of the report it is our opinion that the sale to Airport was irregular and should have been set aside.

■ It is readily apparent, of course, that the judgment neither directed nor specifically authorized a continuation of the sale in the event the highest bidder should not produce his surety on the spot. Presumably, the purpose of requiring an immediate deposit of $500 was to cover the expenses of a resale if the successful bidder should fail to execute the bonds with good surety. Unless otherwise directed the master commissioner has discretionary authority to allow a reasonable time for that purpose. Kentucky Utilities Co. v. Steenman, 283 Ky. 317, 141 S.W.2d 265, 270 (1940). By providing for the deposit the judgment necessarily recognized that the delay between acceptance of the bid and execution of the bonds might be such that if the successful bidder failed to execute the bonds the property would have to be readvertised. So it is clear that the master commissioner misconstrued the judgment, and it is equally clear from the report of sale that his rejection of the Jenkens or Samson bid and continuation of the sale proceeded from that misconstruction and not from any exercise of his discretion as to the time he might

otherwise have allowed Samson to complete execution of the bonds.

The powers and duties of a commissioner in conducting a sale pursuant to an order of court are discussed at length in McGlone v. Smith, 293 Ky. 131, 168 S.W.2d 566, 569 (1943). "He owes the duty to the court, the parties and prospective purchasers to exercise his best judgment and reasonable discretion, using due diligence and acting in good faith. This embraces the discretion as to what time shall be given the highest bidder to execute the bond required. * * When it satisfactorily appears to the commissioner that the highest bidder is not the best bidder and cannot reasonably make the bond within the time he determines it shall be done, it is within his power to re-sell the property then and there." Id.

"Ordinarily, of course, the commissioner should accept the best bid and give the bidder reasonable time in which to execute a good bond; but that is not the invariable rule. Much depends on the bidder himself, and if his financial and moral standing are such as to make it highly improbable that any one will go on his bond, the commissioner is not required to hazard the rights of others by giving the bidder time to look up a bondsman." Briggs v. Muir, Wilson & Muir, 204 Ky. 135, 263 S.W. 740, 742 (1924).

■ We do not hold that the commissioner may not insist upon immediate completion of the transaction—only that he may not do so (unless the order of sale authorizes it) peremptorily and without justification. Nor do we hold that he must explain his action in the report of sale. If in this instance the master commissioner had reported simply that he required an immediate execution of the bonds and the purchaser was unable to comply, it would have been incumbent upon the excepting parties to prove it was unreasonable and thus an abuse of discretion. But the unfortunate fact, affirmatively disclosed on the face of the report of sale, is that the discretion which the law says he must exercise was not exercised at all. In our opinion he could not without apparent reason or cause (hence arbitrarily) require immediate execution of the bonds.

■ It is suggested in the brief for appellees that because of Jenkens' financial condition it was not unreasonable for the commissioner to hold a tight rein. But whatever his financial condition may have been (and it may not necessarily have precluded satisfactory arrangements for refinancing), it was not the reason for the commissioner's action, nor would it have sufficed as a reason for assuming the inability of his principal, Samson, to comply with the terms of the sale.

■ In their petition for a rehearing the appellees have advanced the further argument that because no supersedeas bond was executed in connection with the appeal any question as to the propriety of the sale to Airport has become moot, citing Sedley v. Louisville Trust Company, Ky., 419 S.W.2d 531 (1967). The principle of that case applies when the error is in the judgment of sale as distinguished from the proceedings held pursuant to it. The error here is not in the judgment, but in the order confirming the sale. Although the appeal is taken from both, the judgment of sale is affirmed and only the confirming order is reversed.

Our opinion in *Sedley* rests on Rose v. Cox, 297 Ky. 458, 179 S.W.2d 871, 155 A.L.R. 1246 (1944), in which it was said (179 S.W.2d at p. 874) that if the purchaser "claims title through the deed from the Master Commissioner executed in pursuance of a decretal sale, he need not defend the soundness of the decree *except as to the regularity of the proceedings held pursuant to the judgment*," etc. (Emphasis ours.) Similar qualifying language appears in other opinions enunciating the principle reiterated in *Sedley:*

"It does not appear that a judgment confirming a decretal judicial sale has ever been reversed by any judgment of this

court, *for the single reason that it was made under an erroneous decree*, which was afterwards reversed upon appeal, where the court which rendered the judgment ordering the sale had jurisdiction of the parties and the subject-matter, *and the sale was fairly and regularly made*," etc. (Emphasis ours.) Webb v. Webb's Guardian, 178 Ky. 152, 198 S.W. 736, 741 (1917).

"But in other cases, as of a sale under a decree, the purchase is itself a meritorious act * * * and it is a matter of interest to all parties, and to the public, that such sales, *if fairly made*, shall be sustained, and they are sustained though such decree be thereafter reversed." (Emphasis ours.) Clark's Heirs v. Farrow, 49 Ky. (10 B. Mon.) 446, 450, 52 Am.Dec. 552 (1850).

"As the appeal here is from the judgment directing the sale, *and not from the order confirming it*, a reversal could not affect the title of the purchaser * * *." (Emphasis ours.) Earl v. Porter, 2 Ky.Law Rep. 316, 11 Ky.Op. 85 (1881).

It is abundantly clear that the reversal of an erroneous judgment of sale will not affect the title of one who is not a purchaser *pendente lite*, but we find no authority giving such protection in the case of an irregularity in the sale itself.

■ It is our conclusion that Samson is entitled to be put back in the same position it had when the property was "knocked off" to its agent, Jenkens. The master commissioner's report does not show the amount of the bid, but Samson admits it was $147,100, which is $15,100 higher than the amount subsequently bid by Airport, and we assume there will be no contention that it was more. If not, the sale to Airport should be set aside and the property awarded to Samson for $147,100 on the terms originally provided in the judgment. The order setting aside the sale to Airport and awarding the property to Samson may be conditioned on Samson's compliance with the terms of the sale within such reasonable time as the trial court may prescribe, failing which the property should be readvertized and resold.

The judgment entered on August 18, 1965, is affirmed. The order of October 20, 1965, confirming the sale and the deficiency judgment of November 18, 1965, are reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.