George A. ADKINS, Appellant,

v.

Earl M. CORNETT, Warren J. Mullins,
Harbert Construction Co., and Star
Fire Coal Co., Inc., Appellees.

Court of Appeals of Kentucky.

Feb. 15, 1985.

Clifford B. Latta, Prestonsburg, for appellant.

Woodrow W. Burchett, Burchett & Barber, Prestonsburg, Ronald G. Combs, Hazard, for appellees.

Before CLAYTON, MILLER and McDONALD, JJ.

CLAYTON, Judge.

George Adkins appeals from a summary judgment of the Floyd Circuit Court dismissing his action for specific performance of a verbal contract. As Adkins describes the terms of that oral contract, he was to have received payment of an "overriding royalty" of $.15 (fifteen cents) per ton of coal loaded at a tipple on James Allen's property at Right Beaver Creek, Floyd County, Kentucky. This amount was allegedly due in exchange for his services in arranging for the Allens to lease the 40 acre tract to Earl M. Cornett and Warren J. Mullins. Though the lower court does not expressly set forth its reasons for dismissing, it apparently concluded that the oral contract alleged contravened the statute of frauds, KRS 371.010(6) and (8), and KRS 324.020(1), prohibiting unlicensed persons from acting as real estate brokers. Although we agree with the first proposition, we must reverse for the reasons set out below.

George Adkins is a coal buyer employed by Coal-Mac Coal Company of Pikeville, Kentucky. Along with his obvious responsibility of purchasing coal for Coal-Mac, he also on occasion, acquires or arranges for leases of property Coal-Mac is interested in developing. On April 19, 1982, Allen and his wife leased 40 acres of their land near Goose Creek to Cornett and Mullins as a site for a coal tipple and loading facility. Adkins had earlier located the site and negotiated with the Allens concerning acquiring the property for Coal-Mac. Although the Allens were interested in leasing their property, Coal-Mac was not. The company did, however, give its approval for Adkins to approach the appellees with the same proposition. Cornett and Mullins, after viewing the property with Adkins, authorized him to continue negotiations for the lease. Over the course of the next several weeks, Adkins spent approximately 30 hours working on arranging the lease transaction. During this time, it was his understanding that if he were successful in negotiating the lease and in obtaining a railroad sidetrack to service the property, he would receive $.15 per ton for each and every ton of coal that was subsequently loaded at the tipple. A lease was subsequently executed between the Allens and the appellees, the terms of which provided that the Allens would receive a base royalty of $.50 per ton for the initial 25-year term of the lease, with a slight escalation following exercise of a 25-year renewal option. Following execution of the lease, Adkins approached the appellees requesting a writing to memorialize their understanding. He was informed that the $.15 royalty was dependent not only upon his efforts in securing the lease but also upon his future employment with Cornett and Mullins. As Cornett and Mullins recall their discussions with Adkins, they agreed to pay him a royalty of $.15 a ton if and when he terminated his employment with Coal-Mac and came to work for them, only then would their obligation arise. On December 3, 1982, Adkins initiated the present action requesting $500,000 in actual damages and $500,000 in punitive damages.

The first issue we resolve is whether the statute of frauds applies in the present circumstances to prevent specific enforcement of the alleged oral contract. Cornett and Mullins point to sections (6) and (8) of KRS 371.010 as preventing enforcement. Those sections provide that no action shall be brought to charge any person:

(6) Upon any contract for the sale of real estate, or any lease thereof for longer than one year;

(8) Upon any promise, agreement, or contract for any commission or compensation for the sale or lease of any real estate or for assisting another in the sale or lease of any real estate; unless the

promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent. The consideration need not be expressed in the writing, but it may be proved when necessary or disproved by parol or other evidence.

Adkins denies that the above quoted language applies to the personal services he rendered in negotiating the lease. Pointing to *Meredith v. Meredith*, 204 Ky. 608, 264 S.W. 1109 (1924), and *20th Century Coal Co. v. Taylor*, Ky., 275 S.W.2d 72 (1954), he characterizes the verbal agreement as being a contract for the division of personalty totally separate from the passage of any interest in realty via the lease. Based on this reasoning, he concludes that KRS 371.010 is inapplicable. We disagree.

*Meredith v. Meredith, supra,* unlike the present appeal, does not involve a third-party intermediary requesting compensation for negotiating a lease. In *Meredith,* a dispute arose between a mother, as life tenant, and her two sons, as remaindermen, over the division of royalties they were to receive as owner/lessors of certain oil and gas properties. Thus, the Merediths stood not in the position of Adkins but of the Allens. Moreover, in *Meredith, supra,* a provision regarding payment of royalties was found in the lease involved, with the controversy centering upon a parol agreement that the mother and two sons would each divide ⅓ of the royalties. No parol agreement is involved in the present case and there was no provision in the Allens' lease for Adkins to receive any royalty. Finally, while *Meredith, supra,* might be argued to have some relevance to KRS 371.010(6), the case sheds no light upon KRS 371.010(8), which was made effective some 26 years after entry of the decision in Meredith.

As for *20th Century Coal Co. v. Taylor, supra,* the same defect applies. First, the decision fails to include any reference to KRS 371.010(8). Additionally, the services rendered by the plaintiff engineer in *20th Century* in acquiring and developing drilling sites were markedly different from those of Adkins. Taylor, not only acquired leases, he supervised drilling, made maps of the sites, and kept logs and records. These activities, not being directly related to the passage of an interest in real property, obviously were not included under KRS 371.010. In short, none of the appellant's authority has been able to harmonize the clear language of KRS 371.010(6) or (8) with his position. This is so specifically with respect to KRS 371.010(6) which, in a factually similar dispute in *Barrett v. Hagans,* Ky., 445 S.W.2d 839 (1969), was held to prevent enforcement of an oral contract to convey 10% interest in a gas well as compensation for arranging a lease. Therefore, we conclude that KRS 371.010(6) and (8) bar specific enforcement of the oral contract.

■ This conclusion gives rise to our consideration of the next issue presented by Adkins; specifically, whether he may still recover the value of his services under a theory of quantum meruit or contract implied in law regardless of the applicability of the statute of frauds. We believe that he may, and for reasons set out below, reverse the summary judgment of the Floyd Circuit Court and remand it for further proceedings on the merits.

Where oral promises to perform have been found unenforceable under the statute of frauds, the courts of the Commonwealth have frequently resorted to such equitable doctrines as quantum meruit and contract implied in law to give relief to claimants who have rendered valued services under the unenforceable contract. *See, e.g., Veluzat v. Janes,* Ky., 462 S.W.2d 194 (1971); *Cheshire v. Barbour,* Ky., 455 S.W.2d 62 (1970); *Vest v. Scearce's Adm'r.,* 312 Ky. 181, 226 S.W.2d 942 (1950); *Cheatham's Ex'r. v. Parr,* 308 Ky. 175, 214 S.W.2d 91 (1948); *Head v. Schwartz' Ex'r.,* 304 Ky. 798, 202 S.W.2d 623 (1947). Cornett and Mullins would distinguish the above line of judicial authority by pointing out that Adkins' efforts involved the transfer of a leasehold interest in realty by one

not licensed as a real estate broker. By acting as an unlicensed broker, seeking compensation arising from an oral contract Adkins is supposedly denied the benefit of the above equitable doctrines by *Nisbet v. Dozier*, 204 Ky. 222, 263 S.W. 736 (1924), and *Louisville Trust Co. v. Monsky*, Ky., 444 S.W.2d 120 (1969), both of which involved real estate brokers denied commissions upon oral contracts. The short and simple response to this argument is that Adkins is not a real estate broker within the definition of KRS 324.010(1)(a) and thus not excluded from the protection of the above-mentioned equitable doctrines. The nature of the transaction between Adkins and the appellees was of an isolated and casual character specifically determined in *Ledford v. Faulkner*, Ky., 661 S.W.2d 475 (1983), not to fall within the definition of the statute. Adkins is, therefore, entitled to recover for the reasonable value of his services in securing the lease, the tipple, and the siding.

The judgment of the Floyd Circuit Court is reversed.

All concur.