Dr. William LOCKRIDGE, Appellant,

v.

Frank B. HALE, Jr., Appellee.

Frank B. HALE, Jr., Appellant,

v.

Dr. William LOCKRIDGE, Appellee.

Nos. 87–CA–2403–MR, 87–CA–2406–MR.

Court of Appeals of Kentucky.

Jan. 13, 1989.

Gary W. Barr, J. Mel Camenisch, Jr., Lexington, for appellant.

William S. Howard, Norman Golibersuch, Linda L. Green, Lexington, for appellee.

Before HAYES, MILLER and WEST, JJ.

HAYES, Judge:

These are two appeals from a summary judgment entered October 16, 1987, in Fayette Circuit Court arising out of the purchase of a farm in Lexington, Kentucky.

The facts as described in the deposition of Dr. William Lockridge and the various pleadings filed with the court are as follows. On June 25, 1986, Dr. William Lockridge and Frank Hale, Jr. entered into a written agreement whereby Hale would negotiate a possible purchase of a horse farm for Lockridge and collect a 5% finders fee in return. Hale's mother managed the farm and was a personal friend of the owner, Mary Fisher. Prior thereto Hale was asked to contact Lockridge when Mrs. Fisher decided to offer it for sale. At first he was interested only in the land and improvements, but as the negotiations proceeded he decided to purchase the horses, farm machinery, the household furnishings and other items. In order to finance the purchase, Lockridge and Mary Lou Wibel formed a corporation, Dixiana Farm, Inc. Wibel made the first portion of the down payment on November 1st, for $500,000, through the newly formed corporation. Lockridge was not a shareholder at that time. Lockridge was to pay his half of the downpayment by December 31st but was unable to do so. Wibel therefore made the rest of the downpayment.

The purchase agreement between Lockridge and Fisher called for the sale of (1) 307.625 acres and all improvements for $5,000,000; (2) the equine property for $833,500; (3) the household goods and furnishings for $98,603; and (4) the farm equipment, vehicles, hay and supplies for $61,390. The property was transferred to the corporation for a total price of $5,952,-414.

After the closing Lockridge agreed to stay and manage the farm, although he no longer had a right to acquire an interest in the corporation.

Shortly thereafter, the two had a falling out and Lockridge was evicted from the premises in February. On April 7, 1987, this action was commenced by Hale for Lockridge's failure to pay the 5% finders fee as provided in their agreement. On October 16th, the trial court ruled that because Hale was an unlicensed broker, his activity was illegal and therefore he was not entitled to enforcement of the contract. However, the court also ruled that Hale would nevertheless be entitled to a 5% sales commission for the sale of the personal property. Both parties have appealed from this ruling.

The trial court based its decision on KRS 324.020, which requires the licensing of real estate brokers. That statute provides:

(1) It shall be unlawful for any person to act as a broker or real estate sales associate or to advertise or assume to act as such broker or sales associate within the Commonwealth of Kentucky, without a license issued by the Kentucky real estate commission.

As used in this statute "broker" is defined in KRS 324.010(1)(a) as meaning:

any person who for a fee, commission, compensation or other valuable consideration sells or offers for sale, buys or offers to buy, or otherwise deals in time sharing options, or negotiates the purchase or sale or exchange of real estate, or engages in property management, or

who leases or offers to lease, or rents or offers for rent, or refers or offers to refer for the purpose of securing prospects, any real estate or the improvements thereon for others, but shall not apply to a person whose only compensation for negotiating the purchase, sale or lease of an interest or interests in mineral rights consists of an interest in the rights that are the subject of the purchase, sale or lease[.]

In subsection (2) it is provided that:

One act for a fee, commission, compensation or other valuable consideration of buying or selling real estate of or for another, or offering for another to buy, sell or exchange real estate, or leasing, renting or offering to rent real estate, or referring or offering to refer real estate for the purpose of securing prospects, or otherwise dealing in options or time sharing shall constitute the performing, offering or attempting to perform such act as a broker or sales associate.

Prior to July 13, 1986, however, the definition of broker was limited to those persons who perform the above "as a whole or partial vocation." That clause was deleted in the amended statute. The purposes of the statute include the protection of the public from unscrupulous and incompetent brokers, and to provide good business ethics. *Ledford v. Faulkner*, Ky., 661 S.W.2d 475 (1983). *Sims v. Reeves*, Ky., 261 S.W.2d 812 (1953). No case has construed the statute since the 1984 amendment. It is reasonable to assume that the legislature was responding to the result reached in *Ledford, supra*. *Ledford* involved the sale of oil and gas leases. Ledford, who was not a licensed broker, procured the sale and was to receive ½ of any royalties on the seller's property paid by the buyer. The Kentucky Supreme Court analyzed the apparent conflict between the "one act" provision of KRS 324.010(2) and the "whole or partial vocation" provision of KRS 324.-010(1)(a) as it existed in 1983. The Court concluded that the "one act" provision did not apply unless the defendant was effectuating the sale "as a whole or partial vocation." Because there was no evidence that Ledford had negotiated any other sales, he

was held not to be a "broker" within the meaning of the statute.

Hale urges this court to find no significance to the 1984 amendment. Referring to *Adkins v. Cornett*, Ky.App., 684 S.W.2d 853 (1985), he urges that an isolated sale does not violate the statute. In *Adkins*, a coal buyer orally agreed to negotiate and arrange for a lease of property for a coal tipple and loading facility. The Court initially held that the statute of frauds barred enforcement of the agreement. The Court then held that Adkins was not a real estate broker within the meaning of KRS 324.-010(1)(a) and therefore could recover under the doctrines of quantum meruit or implied contract. If he had been a broker within the language of the statute he would not have been entitled to rely on those doctrines. In deciding that *Adkins* was not a broker the Court cited *Ledford, supra*, and the fact that it was an isolated transaction. However, although *Adkins* was decided after the 1984 amendment, the agreement was made in 1982. The statute as it existed in 1982 controlled.

■ Hale next argues he was not acting as a "broker" because he was negotiating for the sale of a business, an ongoing farm, and not merely for the sale of real estate. Hale cites to little authority which would differentiate the sale of a business, which includes real estate, from the sale of real estate alone. Moreover, the parties' agreement itself makes no reference to the farm as a business and makes no reference to any of the personalty thereon.

Whereas, party of the First Part wishes to purchase that certain farm of approximately 307 acres, known as Dixiana Farm, in Fayette County, Kentucky, owned by Mary Fisher;

The intent of the parties as expressed in the contract appears to be that Lockridge intended a purchase of only the real estate. No mention was made of the equipment, horses, household furnishings, machinery, and other items that eventually became a part of the deal. However, even if the parties' original intent as expressed in their agreement was for Hale to negotiate for

the sale of an ongoing business, it is generally held that a person who negotiates such a sale, which includes real estate, must be licensed as a broker in order to be entitled to *any* commission on the sale. These decisions are based on similar statutes which require that real estate brokers be licensed. *Bonasera v. Roffe*, 8 Ariz.App. 1, 442 P.2d 165 (1968). (Sale of tavern and leasehold in real estate). *Folsom v. Callen*, 126 Ind. App. 201, 131 N.E.2d 328 (1956). (Sale of hotel as going concern, plus leasehold). *DeMetre v. Savas*, 93 Ohio App. 367, 113 N.E.2d 902 (1953) (Sale of restaurant as going concern). *Berchenko v. Fulton Federal Savings & Loan Ass.*, 244 Ga. 733, 261 S.E.2d 643 (1979) (Sale of mobile home court). There are a few jurisdictions, however, which hold that a license would not be required, under statutes requiring real estate brokers to be licensed, when a sale of a business as a going concern includes real property, *provided that the realty is only an incidental portion of the sale. Frier v. Terry*, 230 Ark. 302, 323 S.W.2d 415 (1959). (Where (1) plaintiff procured the sale of a business of one corporation, and (2) the stock between that corporation and another were exchanged, and (3) the only real estate sold was that owned by individual stockholders, and (4) the plaintiff claimed no contract or commission as to the real estate, the plaintiff was held to be acting purely as a business broker and entitled to a commission). The outcome of each case is determined by the interpretation of each applicable statute. *DeMetre, supra.* The contract herein, insofar as it pertains to the real estate, is illegal, and therefore unenforceable. *Asher v. Asher*, 278 Ky. 802, 129 S.W.2d 552 (1939). *Barnel v. Jacobs*, 304 Ky. 374, 200 S.W.2d 940 (1947).

██ In his appeal, Lockridge argues that the trial court erred in granting Hale a 5% commission on the sale of the personalty because (1) the parties' agreement did not include a commission on the personalty, and (2) even if the agreement did include personalty, KRS 324.020 bars all commissions on the transaction. The trial court computed a commission of $47,620.70, based on personalty worth $952,414.00.

As for Lockridge's initial argument, the only evidence of the intent of the parties is the contract itself. A close examination of it reveals no clue that personalty was also contemplated. Hale argues that personalty was a part of the original agreement, and Lockridge argues that it never became part of their agreement.

This issue is one of first impression in Kentucky. However, the courts in other jurisdictions are divided as to whether licensing statutes bar a commission on a sale of both realty and personalty. The clear majority rule is that they do. *Schultz v. Palmer Welloct Tool Corp.*, 207 F.2d 652 (3rd Cir.1953). (Applying Pennsylvania law, no brokerage commission permitted at all in sale of manufacturing plant with land valued at $9,000 and buildings valued at $355,000. Like Kentucky, Pennsylvania had amended its "one act" exception.) *Kenney v. Paterson Milk & Cream Co.*, 110 N.J.L. 141, 164 A. 274 (1933). (Where ⅓ of assets of milk company consisted of real estate, a person employed to obtain a buyer of the going concern was acting as a real estate broker and no commission allowed on either the personalty or real estate. The contract must be treated in its entirety and if one part satisfies the statute and others do not, it is altogether void). *Kazmer—Standish Consultants, Inc. v. Schoeffel Instruments Corp.*, 89 N.J. 286, 445 A.2d 1149 (1982). (Although recognizing *Kenney* as the majority rule, the New Jersey Supreme Court modifies *Kenney* by holding that regardless of the value of the real estate, a *business* broker may recover a commission on the sale of the personalty as long as the value is discernible from the sales agreement *or* from the brokerage agreement, or from surrounding circumstances). *Grammer v. Skagit Valley Lumber Co.*, 162 Wash. 677, 299 P. 376 (1931). *Weingast v. Rialto Pastry Shop*, 243 N.Y. 113, 152 N.E. 693 (1926). (Applying "New York rule," business broker who procured sale of store, lease, goodwill, and other items associated with a business held not to be a real estate broker; the lease simply accompanied the business as part of good will. Plaintiff

held entitled to commission on entire sale). *Quick Shops of Mississippi, Inc. v. Bruce,* 232 So.2d 351 (Miss.1970). (Applying "Mississippi Rule," where the sale of the real estate of an ongoing business is not the dominant purpose of sale, the plaintiff may recover on the *personalty only* ). *Abramson v. Gulf Coast Jewelry & Speciality Co.,* 445 F.2d 802 (5th Cir.1971). (Applying Alabama law, plaintiff could recover commission on the sale of capital stock where the sale of the real estate and stock involved two separate transactions involving different legal entities). *Thomas v. Jarvis,* 213 Kan. 671, 518 P.2d 532 (1974). (Plaintiff, who procured sale of corporate assets, held not entitled to commission on realty or on personalty. Contract was not severable and was an entire contract as to all the assets). *Burns v. Gartzman,* 139 Pa.Super. 453, 11 A.2d 708 (1940). (No commission allowed on the sale of a bakery). *Payne v. Volkman,* 183 Wis. 412, 198 N.W. 438 (1924). (No commission allowed on sale of manufacturing plant. Contract not severable as to the personalty).

We choose to follow the clear weight of authority and hold that the contract is un-enforceable regardless of whether the parties' intent was to include personalty in the computation of a commission. Even under the minority rule, the purchase of the real estate was the dominant purpose of the transaction and therefore Hale would not be entitled to recover a commission. It is interesting to note that because Lockridge never actually acquired title to the property, it is questionable that the conditions precedent to recovery of a commission were ever fulfilled. In any event, that issue need not be addressed as the contract is itself void and unenforceable.

Accordingly, that portion of the summary judgment awarding $47,620.70 to Hale for negotiating the sale of the personalty, and further awarding costs, is reversed; in all other respects the judgment is affirmed.

All concur.