NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0268n.06

No. 10-6360

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Mar 09, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MIKE LAIRSEN, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| JIM FIGUERADO, | ) | O P I N I O N |
| | ) | |
| *Defendant-Appellee*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MIKE NEVES, | ) | |
| | ) | |
| *Defendant*. | | |

BEFORE:     COLE and STRANCH, Circuit Judges; CARR, District Judge.[*]

COLE, Circuit Judge.  Plaintiff Mike Lairsen brought suit against Jim Figuerado and Mike

Neves, alleging that he was entitled to compensation for his role in facilitating the Defendants'

purchase of shares in the limited-liability company that owned the Grider Hill Marina.  The district

court granted summary judgment to the Defendants on all of Lairsen's claims, holding that the

transaction was a real-estate transaction, and as such Lairsen was not entitled to compensation

---

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District
of Ohio, sitting by designation.

because he was not a licensed real-estate broker under Kentucky law. We REVERSE the district court's ruling and REMAND for further proceedings consistent with this opinion.

## I. BACKGROUND

The Grider Hill Marina ("the Marina") is located on Lake Cumberland in Kentucky. The facility consists of 750 wet slips, a ship store, lodging units, park cabins, rental houseboats, and 311 acres of land leased from the Army Corps of Engineers. In 2006, the Marina was purchased by St. Thomas Glen Resorts, LLC ("STG"), a limited-liability company created for the purpose of facilitating the sale. Lairsen acted as the broker of this deal on behalf of the previous owner of the Marina, with "an individual named Guzman" ending as the majority shareholder of STG. Guzman, however, had difficulties servicing the debt he incurred to purchase the Marina, and requested Lairsen to seek out potential buyers for his shares.

Lairsen contacted Figuerado in 2007 about purchasing the majority interest in STG, and serious discussions began in "late July or early August 2008." It is undisputed that Lairsen provided "due diligence information" to Figuerado regarding the Marina and STG. While the parties dispute the terms of the proposed transaction, Lairsen alleges that the plan was for Lairsen, Figuerado, and Neves to enter into a partnership to buy Guzman's stake in STG, which was sixty-five percent of the total shares. The plan was never reduced to writing.

At some point in October 2008, Figuerado decided to proceed with buying Guzman's shares without Lairsen's participation. On October 15, 2008, Figuerado attempted to consummate his purchase of the shares, apparently without the involvement of Lairsen. The proposed purchase was

not consumated, and Fifth Third Bank ultimately took possession of Guzman's shares when he defaulted on his loan with the bank. Figuerado then purchased the STG shares from Fifth Third.

Lairsen filed suit in the Fayette County, Kentucky, Circuit Court, alleging that (1) Figuerado breached an agreement with Lairsen in which Lairsen would act as a broker/agent for the purchase of the shares of STG; (2) Figuerado breached a partnership or joint-venture agreement with Lairsen to purchase the shares of STG; and (3) Lairsen was entitled to compensation for the services he provided to Figuerado under a theory of *quantum meruit*. The matter was removed to the United States District Court for the Eastern District of Kentucky upon Figuerado's motion.

The district court granted summary judgment to Figuerado on all of Lairsen's claims. With regard to the broker/agent and *quantum meruit* claims, the district court relied on KY. REV. STAT. ANN. § 324.020(2), which provides that "[n]o person shall practice real-estate brokerage with respect to real estate . . . unless [t]he person holds a license to practice real-estate brokerage." Because property owned by the Marina included a lease with the Army Corps of Engineers, and because leases are included within Kentucky's statutory definition of real-estate, the district court reasoned that the sale of STG stock was properly considered a real-estate transaction. As such, the district court concluded that the claim fell within the rule announced by Kentucky courts that a non-licensed person may not profit in any way from negotiating a real-estate transaction, and the claim was barred. Similarly, Lairsen's claim for breach of a partnership or joint-venture agreement was barred because the alleged agreement to purchase real estate was oral, which violates the Kentucky Statute of Frauds. (*Id.* at 11.)

Lairsen filed a motion to alter judgment, which the district court denied. This appeal followed.

## II.  ANALYSIS

A grant of summary judgment dismissing a claim or claims is reviewed de novo. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 335 (6th Cir. 2010). At the summary judgment stage, all evidence must be construed in the light most favorable to the non-moving party, in this case Lairsen. *La Quinta*, 603 F.3d at 335. When viewing the evidence in that light, summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c)(2).

Because this is a diversity case, we are obligated to apply the law of Kentucky, the forum state. *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007). To the extent the issue is not squarely addressed by Kentucky courts, "we must attempt to predict what the . . . [State] Supreme Court would do if confronted with the same question." *Himmel v. Ford Motor Co.,* 342 F.3d 593, 598 (6th Cir. 2003).

### A.  Broker/Agent and Quantum Meruit Claims

The district court concluded that Figuerado was entitled to summary judgment as a matter of law on Lairsen's first and third claims—that Figuerado breached an agreement for Lairsen to act as his broker or agent, and that Lairsen was entitled to compensation under a *quantum meruit* theory for the services he provided to Figuerado to facilitate the purchase of STG stock. For both claims, the district court relied on KY. REV. STAT. ANN. § 324.020(2), which states that "[n]o person shall

practice real-estate-brokerage with respect to real-estate located in this state unless . . . [t]he person holds a license to practice real estate brokerage." It is undisputed that Lairsen did not possess a Kentucky real-estate license at the time of the transaction. It is further undisputed that Kentucky law prohibits an unlicensed party from profiting in any way from a real-estate-brokerage transaction. *See Lockridge v. Hale*, 764 S.W.2d 84, 87 (Ky. Ct. App. 1989) (barring recovery of commissions from unlicensed real-estate transactions); *Louisville Trust Co. v. Monsky*, 444 S.W.2d 120, 121-22 (Ky. 1969) (barring *quantum meruit* claims from unlicensed real-estate transactions). Therefore, the district court concluded that Lairsen's claims were barred.

> Kentucky law defines real-estate brokerage as:
>
> a single, multiple, or continuing act of dealing in time shares or options, selling or offering for sale, buying or offering to buy, negotiating the purchase, sale or exchange of real estate, engaging in property management, leasing or offering to lease, renting or offering for rent, or referring or offering to refer for the purpose of securing prospects, any real estate or improvements thereon for others for a fee, compensation, or other valuable consideration . . . .

KY. REV. STAT. ANN. § 324.010(1). On its face, there is no aspect of the proposed purchase of STG shares that would qualify under this definition. It is true, as the district court points out, that STG leases property from the Army Corps of Engineers. But the proposed transaction involved a transfer in the ownership of shares in STG from Guzman (and later Fifth Third Bank) to Figuerado, not a change in the status of the lease. Thus, the lease was not being "exchanged" during the course of the proposed transaction—both before and after the transaction, the lease was to remain in STG's name.

The district court concluded that this is a distinction without a difference. We disagree. Kentucky law makes clear that shares in a limited-liability company are the personal property of the shareholder. KY. REV. STAT. ANN. § 275.250. Thus, the proposed transaction facially involved the sale of personal, not real, property, and a transaction of personal property generally would not require a real-estate broker's license. The district court would have those shares, for all practical purposes, transformed from personal property into real property.[1] We cannot square this result with the plain text of the statute.

The reported cases the district court relied on are distinguishable. In *Lockridge*, the transaction in question was the purchase of a horse farm. 764 S.W.2d at 85. While there was some non-real property involved in the transaction, such as horses and farm equipment, there is no question that the heart of the transaction was a transfer of real property. *See id.* at 85 (describing a transaction where the value of the land was $5 million, and the other components amounted to less than $1 million). In addition, while it appears that the buyers formed a corporation to facilitate the purchase of the real property, title to the land was to pass from the original owner to the corporation, creating an "exchange" of real property. This did not occur in the transaction in this case. Similarly, *Kirkpatrick v. Lawrence* involved the complete sale of a business from one party to another, with

---

[1] The district court cites to "KY. REV. STAT. ANN. § 275.010(a)" as support for the proposition that "the formation of [LLC's] is not, however, intended to provide relief from licensure statutes for those individuals serving as agents of those persons seeking to acquire shares in [an LLC]." The provision the district court quotes from is in a subsection dealing with "Professional limited liability companies," and speaks to the regulation of those entities. *See* KY. REV. STAT. ANN. §§ 275.010(3)(a)-(b), 275.015(24) - (25). STG was not a professional LLC, and thus was not governed by § 275.010(3).

a corresponding transfer of the lease to the new owners. 908 S.W.2d 128, 129 (Ky. Ct. App. 1995). This makes the transaction in *Kirkpatrick* fundamentally different from the transaction before us.

Finally, the district court's interpretation of Kentucky's real-estate-brokerage law would lead to problematic results. Since many businesses have some real-property holdings, under the district court's reasoning many business transactions would require a licensed real-estate broker. For example, such reasoning would require a stock broker attempting to buy or sell shares of a company that owns real property in Kentucky to possess a Kentucky broker's license. This would create a significant burden on commercial transactions that involve companies with a presence in Kentucky. There is no authority that this is the intent of the Kentucky legislature or Kentucky courts, nor does the text of Kentucky law support such an interpretation.

For these reasons, we conclude that the Kentucky courts would not find that the proposed sale of STG shares was a real-estate transaction requiring the services of a real-estate broker.

B. *Statute of Frauds*

The district court concluded that the Kentucky Statute of Frauds, KY. REV. STAT. ANN. § 371.010, barred Lairsen's claim that Figuerado breached an implied partnership agreement or joint venture. This holding is premised on the conclusion that the proposed transaction is a real-estate transaction. As discussed above, we see no support for the district court's conclusion that Kentucky courts would consider the proposed sale of STG shares to be a real-estate transaction.

III. CONCLUSION

We REVERSE the district court's grant of summary judgment on all of Lairsen's claims and remand for further proceedings consistent with this opinion.